## HORINE vs. HORINE & FUNK.

1. In an action against an administrator for money alledged to have been received by him from a debtor of his intestate, such debtor is not a competent witness, without a release, to prove the payment of such debt.

2. Guardians have the power to release a debt due their wards.

3. An infant may release a debt due him, and it cannot be objected to by a third person.

### APPEAL from Jefferson Circuit Court.

Cole, *for Appellant.*

1. The case made by the complainant's bill was exclusively cognizable in the County Court,

and consent of parties could not confer jurisdiction where the law has expressly denied it. 8 Mo. R., 169, Miller vs. Woodward.

2. The Circuit Court erred in receiving the testimony of Henry P. Horine, an interested witness. The court also erred in the admission of the release to Henry P. Horine, to render him competent.

3. The decree is erroneous. It is rendered against Matthias T. Horine, *de bonis propriis*, and not as administrator of Michael Horine.

4. There is no evidence to show that any assets of the estate of Michael Horine came to the hands of defendant as administrator. Bac. Ab., tit. Ex'rs & Adm'rs, letter D.

5. If there were assets that came to the hands of the administrator, yet the court erred in not directing an account to be taken and an allowance to be made of all just credits to the administrator. Those who seek equity must do equity.

6. Upon principle and fact, this decree is unjust, and should be reversed. The heirs of Michael Horine, by their intermedling with the estate of their ancestor, both in Missouri and Kentucky, without authority of law, became executor *de son tort*, and would be responsible to the lawful administrator for the estate—but are endeavoring, in this action, to take advantage of their own wrong and make an innocent person responsible for a loss which was occasioned by their intermedling.

7. The acts of Henry P. Horine—money received by him, &c., under the authority of the heirs of Michael Horine, deceased—are obligatory upon said heirs, and change the character of the money received from being assets of Michael Horine (there being no creditors) to a matter of contract as between an agent and his principal, and the complainants are estopped by their own acts from proceeding in equity to enforce this demand, which manifestly has no connection with the estate of decedent, as shown by their own witness.

8. The court erred in not granting a new hearing, for the reasons alledged.

. FRISSELL, *for Appellee.*

1. There is no error of which the appellant can rightfully complain. The decree is for the right party and more moderate in its amount than he could reasonably expect from the circumstances with which he has surrounded himself.

2. All persons are made parties that are required by law to be made parties, and sufficient to enable the court to do complete justice. Story's Eq. Pl., p. 88-9; ib. 89, 90, note 1; 16 Vesey's Ch. R., 325-6-7-8; 2 Paige's R., 19, 20.

3. As the court can do complete justice in the case, with the parties before it, an objection for the want of parties, comes too late at the hearing. The defendant should have demurred. The defect, if any, is apparent upon the face of the bill. Story's Eq. Pl., 202, 414, 415; 2 John. Ch. R., 247.

4. The rule that all parties interested must be technical parties, is a rule adopted for convenience merely, and is dispensed with when it becomes extremely difficult or inconvenient. 1 John. C. R., 349-50, 438-9; 2 Mason's C. C. Rep., 193-4-5; 2 Paige R., 19, 20.

5. That the practice to permit one or more of a considerable number to sue in behalf of themselves and others standing in the same relation, has been adopted for the purpose of saving expense. Hallet vs. Hallet, 2 Paige R., 19, 20.

6. The court had jurisdiction for the reason that no assets were admitted by the defendant below, and the complainants were compelled to seek a discovery of assets. When a party is compelled to resort to a court of equity for relief, the court will settle the whole subject matter of the suit.

7. .The appellant has no right to complain of the decree as excessive, for the reason that, as administrator, it was his duty to settle annually and loan out the money at the best interest he could obtain, or he can retain the money in his own hands by leave of the court. He should therefore

pay as high interest as the ordinary rate of interest, which was ten per cent. per annum. He cannot complain of eight per cent. compound interest, which is two per cent. less than the current rate.

8. Matthias T. Horine was chargeable with the sum of $450, paid to him in 1835, if we are to believe his statements in his own letters. Nor is there any proof to the contrary, unless a witness can prove a negative. The witness states Matthias did not have the horse in his possession, nor did he receive, to his knowledge, any of the proceeds. The words "to his knowledge" are equivocal, and should be construed to mean that he did not know that Matthias had the horse in his possession, &c.—for he certainly could not know these things unless he had attended upon Matthias as his shadow.

9. The above points cover all that was *expressly decided* by the court below, and this court will not notice other matters (not decided,) especially when the decree does complete justice.

SCOTT, J., *delivered the opinion of the Court.*

This was a bill in chancery, filed by the appellees, who were complainants below, in their own right and also as guardians for some infant complainants, and also in behalf of others, against the appellant, who was the defendant. The bill states that the complainants and those for whom and in whose behalf they sue, were the descendants, or had intermarried with the descendants, of Michael Horine, deceased, who died many years before, in St. Louis county, possessed of considerable real and personal estate in the State of Missouri, all of which was duly administered and divided among the heirs of the said Michael Horine. That part of the estate of the said Horine was in Kentucky. That Matthias T. Horine, the defendant, took out letters of administration in the county of Jefferson, in this State, some years ago, for the purpose of collecting that portion of the estate of the said Michael that was in Kentucky.— That, as such administrator, the said Matthias received, in the year 1835, the sum of $450 from Henry P. Horine of Kentucky, who was indebted to the estate of the said Michael Horine. Four hundred dollars of this sum was paid in a stable horse and the accounts for his services for two years, which horse had been sent to Jefferson county in this State, where he made his seasons; the balance of the said sum was paid in cash. The bill prayed for a discovery, and that the defendant might account for the sums received by him.

Horine, in his answer, admits that he took letters of administration on the estate of M. Horine, deceased, with the hope of getting some effects belonging to his estate. That after diligent search, he found none, but incurred a considerable expense, which has not been reimbursed. In relation to the horse and the fifty dollars, of which mention is made in the complainants' bill, he states, that about seven years ago, one Wilson

brought a stud horse from Kentucky to Bryant's, near Herculaneum, in Jefferson county, and left the horse at one Bryant's, who kept the horse as a stallion. That, from circumstances, believing the horse belonged to Henry P. Horine of Kentucky, who was a debtor of the estate of Michael Horine, in order to obtain satisfaction of the said indebtedness, he caused an attachment to be levied on him, but subsequently, being convinced that the horse did not belong to the said H. P. Horine, he discontinued the proceedings. That he never had the horse in his possession, nor derived any profit from him. That the money paid by H. P. Horine was subsequently recovered from him by process of attachment against the said H. P. Horine in the State of Illinois.

To the answer, there was a replication, and the cause set for hearing. The deposition of H. P. Horine was taken and read on the hearing. An exception was made to his testimony on the ground of his interest, but it was overruled, a release to the witness having been first read, which was executed by B. Horine and J. Funk, the complainants, in their own right and as guardians for their wards. It appeared from this deposition that Horine, as the agent of the estate of Michael Horine, [had received claims for collection] amounting to about the sum of $600, which, after paying a lawyer's fee and deducting a compensation for his services, left about $480, which was paid over to the defendant, in the manner stated in the bill.

Letters from the defendant to H. P. Horine were read, in one of which it is stated, "I have to observe that your proposition is accepted in your letter to Mrs. E. Bryant is now before me, to which in answer I have to reply, that it will be impracticable for me to meet you in Louisville by the 1st of May, as I shall then be in New Orleans; if you will send me what you think the balance may be, deducting the horse and his services for two years, say in the whole $400, and please send it by mail at our expense in as large notes as possible we will receipt to you in full. Please let me hear from you upon this subject." It appears, moreover, from the contents of this letter, that it was an answer to one addressed to Mrs. E. Bryant, a relation of the defendant, by H. P. Horine.

In another letter, the defendant writes to H. P. Horine, "Yours of 8th May is now before me, in answer to which I have to say I was somewhat disappointed in not receiving some money with it as the heirs here are very impatient about the business. Please send us some as soon as convenient, say 20, 50 or $100 at a time—we will pay the expense. Printer has been almost dead this spring; at one time I would not have given $5 for him; he, however is better; he will do nothing this season." In an-

.other letter, the defendant says: "Your favor of the 23rd ultimo was duly received, containing $50, which I hereby acknowledge the receipt of." These letters were respectively dated in March, June and July, 1835.

A witness for the defendant testified that the horse stood at Bryant's in Jefferson county; that the defendant never at any time had the possession of the horse, and that he endeavored to attach the horse for a debt due the estate of M. Horine, deceased, but the horse was taken across the Mississippi and went into the possession of Abraham Horine, the father of the defendant, when he very soon died. That the horse was sent by H. P. Horine to Missouri by one Wilson.

The court decreed against the defendant, and adjudged him to pay the sum of $900 05. This amount was made by compounding the interest annually at eight per cent. From this decree the defendant appealed.

Henry P. Horine was primarily liable for the debt, with the payment of which Matthias Horine, the defendant, is sought to be charged. If the defendant is made to pay it, Henry Horine will be exonerated. He is then directly interested in saddling the burden of it on the defendant. If the evidence is to be believed, he is yet owing a part of the debt out of which this controversy arose. The complainants are entitled to a recovery from one or the other of these persons; on what principle is it that one of them who is primarily liable can be called to show that it should be paid by the other? In the case of Collins vs. Ellis, 21 Wend. 397, it was held that a person *prima facie* liable for the payment of a debt is not a competent witness to sustain a suit in which the debt or a part of it is sought to be charged upon a third person or upon a fund in his hands.

A release executed by the guardians was not effectual to restore the competency of Horine. They had no authority by law to execute a release for their wards. A release by an infant himself is generally sufficient for this purpose, for it may be only voidable and not void, in which case a stranger shall not object to it. Greenleaf, sec. 427. Independently, however, of these considerations, there were other parties to the suit who did not execute the release—so, beyond all question, Horine was interested.

If Horine's deposition be thrown out of consideration, there is not evidence sufficient in the cause to warrant a decree against the defendant. It cannot escape observation that the letter of H. Horine, making propositions to the defendant, is not produced. That letter might reflect light upon the transaction. It is a little suspicious that all the letters which make against a party should be carefully preserved, whilst no so-

licitude is manifested for the preservation of those which might serve to explain them. It does not appear that the horse ever came to the possession of the defendant;—his allusion to the state of his health is not, of itself, sufficient to establish that fact. It is asserted in the answer, and not disproved, that an attempt was made to subject the horse to the payment of the debt due by H. P. Horine, by process of attachment, which failed. This statement of the answer is corroborated by the testimony of a witness. ·The existence of this fact would negative the inference that the horse was ever received by the defendant. There might have been claims upon him, or other reasons for withholding him. It is also in evidence that the horse was removed to Illinois, where he shortly afterwards died.

The defendant took out letters of administration in this State. These did not require him to go to another State to collect the debts due the estate of his intestate, especially as he had no evidence of debt against H. P. Horine, who resided in Kentucky, on which suit could be brought. Such being the law, if a horse of a non-resident debtor should be found in this State, and an attempt should be made by an administrator to subject him to the payment of a debt due his intestate, which should fail, it would be hard to hold the administrator liable for such failure. It is clear that an administrator cannot convert a debt or change a security of his intestate without subjecting himself to a liability for its ultimate payment. But under the circumstances of this case, if the administrator did consent to receive the horse in part satisfaction of the debt, as there was no obligation on him to go to Kentucky, as the horse was the only property of Horine in this State, as his ability to pay the debt, had he been pursued abroad, was doubtful; from the facts that he had withheld money collected by him for a number of years, and had as yet failed to pay over a portion of it, would it not be extremely hard to make him liable, when there is nothing showing that he acted in bad faith; but, on the contrary, all the circumstances warrant the belief his course was the most judicious that could have been pursued? We will not, however, put our decree on this ground, but we feel perfectly satisfied in saying that, after the exclusion of the deposition of Horine, the evidence is insufficient to warrant one against the defendant.

The other Judges concurring, the decree will be reversed and the bill dismissed.