## Souther v. Belleau.

(Decided May 30, 1924.)

### Appeal from Boone Circuit Court.

1. Witnesses—Defendant in Action for Wrongful Death Properly Not Allowed to Testify Concerning what Took Place Between Him and Deceased.—In an action under Ky. Stats., section 4, for malicious shooting and killing of plaintiff's husband, court properly refused to allow defendant to testify concerning what took place between him and deceased just before and at time of killing, under Civil Code of Practice, section 606, subsection 2.

2. Pleading—Necessary Averment Must be Sustained by Proof, if Controverted.—A necessary averment must be sustained by proof, if controverted.

3. Death—Finding Killing was Not in Self-Defense Sustained.—Evidence held to sustain finding killing was not in self-defense, in action by widow for malicious shooting and killing of husband, under Ky. Stats., section 4.

4. Appeal and Error—Death—Instruction as to Measure of Damages for Death of Husband Held Erroneous, But Not Prejudicial.—In action for malicious shooting and killing of husband, under Ky. Stats., section 4, instruction directing jury to award plaintiff "such sum in damages as you may believe from the evidence will fairly and reasonably compensate" said decedent's estate was erroneous, and should have directed such damages as plaintiff would sustain by destruction of power of husband to earn money, but error was not prejudicial.

O. M. ROGERS for appellant.

JOHN L. VEST for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

This action was commenced in the Boone circuit court under section 4, Kentucky Statutes, by Minnie Belleau against appellant, Henry D. Souther, to recover of him damages for the malicious shooting and killing of her husband with a shotgun, not in his necessary self-defense. The petition is a model of brevity and directness, and reads:

"The plaintiff, Minnie Belleau, states that on November 28th, 1920, she was the lawful wife of William Belleau and on said date the defendant Henry Souther, not in his self-defense, maliciously shot and killed said William Belleau with a shotgun.

loaded with powder and lead and other hard substances, and that by reason thereof the plaintiff has been damaged in the sum of twenty-five thousand dollars.

"Whereof she prays judgment. . . . "

The jury returned a verdict in favor of the widow in the sum of $7,000.00 on which judgment was entered. This appeal is from that judgment.

The facts which led up to the homicide were about as follows:

In the spring of 1920, the appellee and her deceased husband moved on the farm and in the home with the appellant, the same being a double house, under a cropping contract. The farm was owned by the appellant's father. The deceased was permitted to own and keep a cow on the place for family use. The appellant and the deceased got along together, at least without any serious break, until November 27th, when appellant requested deceased to move his cow from the barn where he had been keeping her to the tobacco barn north of the residence, in order that he might have the use of the stall that had been occupied by the cow. The deceased refused to move his cow or allow appellant to have the use of the stall. On the afternoon of that day, the appellant took possession of the stall by placing one of his cows in it. When the deceased came to the barn that evening and saw one of appellant's cows occupying the stall, appellant says he grabbed a pitchfork, rushed at the appellant and ran him out of his own barn and barn lot to the house.

The premises are detailed in brief about as follows: The shooting took place in a cow shed about two or three hundred feet from the house. The shed was a "lean-to" against the main barn and there had been cut a door above to the loft in the main barn and near the top of the shed to enable one to climb up a ladder from the shed into the hayloft; in fact there were two such openings, but only one seems to play any part in this tragedy. Belleau had his cow in one of the stalls of the barn, this stall being the third one from the entrance, and about twelve feet from the door leading into the hayloft which was in use. The first stall at the opening where entrance was had into the shed was about six feet wide and the remaining tier of stalls were about three feet wide, and Belleau's cow being in the third stall would

make this point from nine to twelve feet on a level from the door leading into the hayloft, but when it is considered that the door at the top of the shed was reached by a ladder and was some ten or twelve feet high, the distance along the hypotenuse of the triangle would be something in the neighborhood of twelve feet from the door to the front of the stall when measured from the middle of the stall, although the exact distance is a matter of no great consequence.

It was further shown that the deceased had been shot from such a position that the shot ranged from the top of his right ear, down his right cheek and found lodgment in his neck and mouth, and a small part of his cap, which he wore at the time he was shot, was later taken out of his mouth by the doctor called to attend him.

Belleau lived only a few hours and died without having regained consciousness. It is the theory of the plaintiff and appellee in this case that the fatal shot was fired from the door in the loft while the deceased was somewhere in the barn so as to make the range of the bullet downward, and that he was shot from behind as the trend of the bullet was towards the front.

Outside of the proof of the physical conditions surrounding the barn, the location of the door in the hayloft, a board about a foot square found there on the hay with fresh mud on it, the plaintiff proved nothing except two statements made by the appellant to two witnesses there, before he had time to plan a defense.

Appellant's chief complaint is that the trial court refused to allow him to testify concerning what took place between him and the deceased just before and at the time of the killing. The widow objected to this evidence on the ground that its introduction would violate subsection 2 of section 606, Civil Code, providing in substance that no one shall testify for himself against another who is dead except in specified cases. She says that inasmuch as appellant was the only other party to the transaction which brought about the death of her husband, he ought not to be permitted to give his version of the affair because there could be no equality or mutuality in such a situation, one party to the litigation being silenced by death and the other ought to be silenced by the law.

The testimony offered by appellant Souther as to what took place in the barn immediately before and at the time of the homicide could not have been used for the

purpose of affecting one who was living and who when over fourteen (14) years of age and of sound mind, heard such statement or was present when such transaction took place or when such act was done or committed, and was therefore incompetent unless the decedent or representative or some one interested in his estate had testified against appellant with reference thereto. Our Code provision does not allow a person to testify for himself concerning any verbal statement of or any transaction with, or any act done or omitted to be done by an infant under fourteen years of age, or by one who is of unsound mind or dead, when the testimony is offered to be given, except for the purpose and to the extent of affecting one who is living and who being over fourteen years of age and of sound mind heard such statement or was present when such transaction took place. Appellant stood in this inadvantageous relation to the various transactions and facts connected therewith in this case.

We have no cases exactly in point but many that by analogy sustain the contention of appellee. In the case of Kentucky Utility Company v. McCarty, 169 Ky. 38, in considering the admissibility of evidence against a deceased person under circumstances much like those before us, we said:

> "As before stated, the recovery is not for the benefit of the estate. The father does not take through the estate. He is a direct beneficiary under the statute and the recovery goes directly to him. Therefore, in testifying to transactions with the decedent, he testifies not for the estate but for himself. That being true the provision of the Code clearly applies."

In the case of Burnett's Admr. v. Brand, 165 Ky. 616, we held in substance that subsection 2 of section 606 Civil Code prohibiting any person from testifying for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by one who is dead, when the testimony is offered to be given, except in certain instances not here involved, a physician is not competent, in an action against him by the administrator of a patient to recover damages for the patient's death, alleged to have resulted from malpractice in the performance of an operation, to testify to conversation and transaction had with a deceased person at the time when appellee was not present although she was

over fourteen years of age. The evidence therefore was incompetent and the trial court properly so ruled.

It is next insisted that appellee did not prove the killing was not in self-defense although it was properly averred in the petition. A necessary averment must be sustained by proof if controverted.

While there was no eye-witness to the killing save appellant, there were many circumstances proven which strongly tend to support the contention of appellee as to how the killing occurred. For instance, a board on which there was fresh mud was found in the loft, from which place appellee contends appellant fired the shot after he had concealed himself there with a gun to await the return of the deceased for the purpose of assassinating him as he entered the barn. The evidence also tends to show without contradiction that the shots entered the right side of the head a little to the rear of the ear and tended downward, thus proving, as appellee contends, that the shot was fired from a position above the head of the deceased. This agrees with her theory that the fatal shot was fired from the loft of the barn and not from ground, as contended by appellant. Such circumstances often speak louder than words and are entirely sufficient to support a verdict of guilty or for compensatory damages.

It is also insisted that the verdict is so flagrantly against the evidence as manifestly to show it was the result of passion and prejudice; that the verdict is not sustained by the evidence; that the verdict of the jury is contrary to law. We think this without merit.

It must be admitted that the instruction on the measure of damages was incorrect for it directed the jury that if it found for plaintiff that it "may award her such sum in damages as you may believe from the evidence will fairly and reasonably compensate" said decedent's estate. It should have directed the jury in case it found for plaintiff to award her such sum in damages as would fairly and reasonably compensate her for the loss which she would sustain by the destruction of the power of her husband to earn money. The measure is in effect the same though it is stated differently.

We find no error to the substantial prejudice of appellant and the judgment must be and is affirmed.

Judgment affirmed.