LESLIE V. FREEMAN v. WILLIAM BERBERICH, Doing Business under the Style of Berberich's Delivery, and CLYDE SIMS, Appellants. —60 S. W. (2d) 393.

Division One, April 20, 1933.

*Leahy, Saunders & Walther, William, O'Herin* and *Lyon Anderson* for appellants.

*Foristel, Mudd, Blair & Habenicht* for respondent.

HYDE, C.—This is an action for personal injuries sustained by plaintiff when the automobile in which he was riding, driven by defendant Sims, collided with a truck owned by defendant Berberich. Plaintiff obtained a judgment for $10,000 against both defendants.

Plaintiff's petition stated a number of charges of primary negligence and also a charge of negligence under the humanitarian doctrine against defendant Berberich. It made similar charges of negligence against defendant Sims, whose answer was a general denial. The answer of defendant Berberich, in addition to a general denial, made a number of charges of negligence against defendant Sims which it stated were the proximate cause of plaintiff's injuries; stated that plaintiff and defendant Sims were engaged in a joint enterprise; and alleged contributory negligence of plaintiff in permitting defendant Sims, without protest or warning, to attempt to pass another car at the top of a hill and on a curve. The facts which plaintiff's evidence tended to show were, as stated in plaintiff's brief, as follows:

"Defendant Sims intended to go from St. Louis to Festus to be initiated in a branch of some veterans' organization. Plaintiff also desired to go to Festus for a like purpose, and was invited by Sims to ride in the latter's car and did so. After the initiation proceedings and about midnight or later, Sims, with plaintiff and two other gentlemen in his car, started to drive to St. Louis, and when between Pevely and Barnhart the car in which they were riding collided with defendant's truck. There was a certain car, referred to by plaintiff's witnesses as a 'Whippet,' proceeding northwardly ahead of the car in which Sims and plaintiff were riding and moving slowly. Sims attempted to drive around the Whippet and pass it on its left. Just before or about the time of making the attempt to pass

the Whippet, Sims and plaintiff observed two automobiles, which were distinguished only by their headlights, approaching some six or seven hundred feet to the north. Plaintiff and his witnesses described the movements of the two headlights as, that one passed the other and the one which presently collided with him, swerved first to the left and then back to the right, running all the time at a high rate of speed, described by some of the witnesses as from fifty to sixty miles per hour, and without diminishing its speed collided head-on with Sims' car while the latter was attempting to pass around the Whippet.

"Both plaintiff and Sims testified that defendant's truck, while approaching and before the collision, failed to give any signal or warning of its approach and movement, or at least testified that they heard none."

The evidence further "shows that Sims turned out to pass the car in front of him when he was about twenty to thirty feet behind said car, and that he continued on the left side of the pavement until he had overtaken said car and reached a position where his front wheels were about even with the driver's seat of the car opposite, when he put on his brakes and slowed down, and an instant later collided with appellant's truck. At the time of the collision the front wheels of Sims' car was about even with the rear wheels of the Ford or Whippet."

On the part of defendant Berberich it was shown by the occupants of the car, referred to as the Whippet (it was a Reo) which defendant Sims attempted to pass just before the collision, that their car was traveling up a hill at a speed of from fifteen to twenty miles per hour; that near the top of the hill defendant Sims' car pulled around them from behind; that about the same time the lights of defendant Berberich's truck "flashed up from the other side of the hill;" that defendant Sims' car was on the wrong side of the road at the time of the collision; and that after the accident one of the occupants of Sims' car stated that they were going sixty miles per hour. Defendant Berberich's automobile was a delivery truck which was being used to deliver newspapers. He said that it was equipped with a governor which prevented it from running over forty-five miles per hour. At the time of the collision it was being driven by his brother, who died prior to the trial.

Both defendants, after their respective motions for new trial were overruled, appealed from the judgment in favor of plaintiff. Defendant Sims and plaintiff have entered into a stipulation "that whatever judgment and decision, whether of affirmance or reversal, may be entered by the court upon the appeal of appellant Berberich, a like decision and judgment may be made and entered as against appellant Sims."

■ I. Defendant Berberich, as appellant, assigns as error the action of the court in giving and refusing instructions, particularly the instruction given by the court, which concerned his liability under the humanitarian rule, after its refusal in the form he requested it. The instruction which the court gave was, as follows:

"The court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in the evidence defendant's, William Berberich's, automobile was being driven *at a reasonable rate of speed and* that, after the agent and servant of said defendant Berberich in charge of and operating said defendant's automobile saw, or by the exercise of the highest degree of care could have seen, the automobile in which plaintiff was riding when it came into a position of imminent peril of being struck, said agent and servant of said defendant could not, by the exercise of the highest degree of care, and with reasonable safety to said defendant's automobile and its occupants, have stopped, or slackened the speed of, or swerved said automobile, or have given plaintiff warning of its approach, in time to have avoided colliding with the automobile in which plaintiff was riding, if you so find, then plaintiff is not entitled to recover of said defendant and your verdict must be in favor of defendant, William Berberich."

Appellant contends that this instruction, in effect, directed that, to find for appellant, the jury must find both that "defendant William Berberich's automobile was being driven at a reasonable rate of speed" prior to the time its driver saw (or could have seen) the Sims' car, and that "after the agent and servant of said defendant Berberich in charge of and operating said defendant's automobile saw, or by the exercise of the highest degree of care, could have seen" plaintiff's peril he could have avoided the collision; and that it, therefore, injected antecedent negligence into the consideration of his liability under the humanitarian rule. To require the jury to find that defendant was free from both primary negligence and negligence under the humanitarian doctrine is clearly reversible error. [Wolfson v. Cohen, 55 S. W. (2d) 677; Kloeckener v. St. Louis Public Service Co., 331 Mo. 396, 53 S. W. (2d) 1043; Alexander v. St. Louis-San Francisco Ry. Co., 327 Mo. 1012, 38 S. W. (2d) 1023; State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S. W. (2d) 798.]

Recently, commenting upon rate of speed of a defendant driver of an automobile prior to striking one in a position of peril, this court said:

"The proof of negligence as to the rate of speed under the existing conditions does not, however, aid plaintiff in sustaining the submission of the case on the humanitarian theory, as plaintiff urges. Such evidence may show negligence in other respects, but, being antecedent negligence, defeats rather than aids plaintiff on the humani-

tarian theory. That defendant was going at such a high rate of speed, though itself unlawful, as to prevent his avoiding the injury after the peril is discovered, or should be discovered, does not make a case under the humanitarian theory." [Payne v. Reed, 332 Mo. 343, 59 S. W. (2d) 43.]

Plaintiff offered no instructions, except as to the measure of damages. Therefore, the jury was given no light as to what state of facts would justify a verdict for plaintiff. The jury could and undoubtedly would infer, from the wording of this instruction and from the fact that there were no others on this proposition, that if the converse of the first proposition stated was true, namely: If appellants' automobile was not being driven at a reasonable rate of speed (in addition to the other requirements), their verdict must be for the plaintiff. To require that appellants' automobile must have been driven at a reasonable rate of speed before he can be absolved from liability under the humanitarian doctrine, clearly makes his liability under it dependent upon whether or not he was guilty of antecedent negligence and a jury would, unquestionably, be justified in thinking that was what this instruction meant. This court recently said in a case submitted without instructions and in which the humanitarian doctrine was applicable:

"We have no idea that the jury, in the absence of any instruction on the matter, at all understood the theory on which alone it could find for plaintiff. While most lawyers know something of the limitations of this rule and what facts the jury must find in order to find for plaintiff thereunder, a jury of laymen could no more understand the rule itself or how to apply it to the facts in evidence than they do about extracting the cube root of a number in five figures, or perhaps applying 'Einstein's Theory of Relativity,' whatever that may be." [Iman v. Freund Bread Co., 332 Mo. 461, 58 S. W. (2d) 477.]

This instruction, mingling matters of primary and humanitarian negligence and not covering the whole situation as to either, only tended to further confuse the jury as to the issues they were to try. This instruction, as defendant offered it, was the same as the one the court gave except that in place of the italicized words "at a reasonable rate of speed and" it contained the words "at such a rate of speed." Plaintiff says appellant was not entitled to that instruction and there was, therefore, no error in refusing it because it authorized a verdict for defendant, if he was not chargeable with negligence under the humanitarian rule, even though there was evidence to support plaintiff's charges of primary negligence. Conceding that it was not error to refuse appellant's instruction, still it would be reversible error if the court then gave an erroneous or misleading instruction. Plaintiff also argues that the instruc-

tion as given by the court was more favorable to appellant than he was entitled because it makes no reference to contributory negligence of the plaintiff in getting into a position of peril. His theory seems to be that the humanitarian doctrine does not apply unless plaintiff got into the position of peril by his contributory negligence. His brief says: "there can be no true humanitarian doctrine in a case where there is no contributory negligence." This is not the law. We have recently held that an instruction on plaintiff's negligence has no place in a case which is submitted solely on the humanitarian doctrine. [Wolfson v. Cohen, 55 S. W. (2d) 677; Millhouser v. K. C. Pub. Serv. Co., 331 Mo. 933, 55 S. W. (2d) 673.] This court also said in Grubbs v. K. C. Pub. Serv. Co., 329 Mo. 390, 45 S. W. (2d) 71: "Under the humanitarian doctrine the cause of the injured party's peril is immaterial (save, perhaps, when he voluntarily seeks injury, as with the intent of committing suicide or collecting insurance)." Likewise, in Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482, it is said: "Regardless of what occasions his peril, the law out of its extreme regard for human life makes it the duty of another who sees him in peril to exercise ordinary care to prevent injury or death."

If not a positive misstatement of the law, the instruction given is at least so misleading as to be prejudicial error. We have held that to give an instruction, even though technically correct, which is misleading because it fails to cover the entire situation, leaves in doubt the real issues and confuses the jury as to applicable rules of law, is reversible error. [Millhouser v. K. C. Pub. Serv. Co., 331 Mo. 933, 55 S. W. (2d) 673; Peppers v. St. Louis-San Francisco Ry. Co., 316 Mo. 1104, 295 S. W. 757; Boland v. St. Louis-San Francisco Ry. Co., 284 S. W. 141.]

Moreover, we cannot overlook the circumstances under which the court gave this instruction. Here was a case submissible upon both charges of primary negligence and negligence under the humanitarian rule. When there is only one charge of negligence, there is some possibility that a jury, without instructions, might understand what facts they must find to render a verdict for plaintiff. How could that be expected when a plaintiff has evidence under which he may recover either upon a charge of primary negligence, to which contributory negligence is a defense, or upon negligence under humanitarian doctrine, where often the same facts which would tend to convict plaintiff of contributory negligence tend to demonstrate defendant's liability for humanitarian negligence and where the same facts which would defeat plaintiff's right to recover on the humanitarian theory tend to prove primary negligence? It is only possible, by plain instructions clearly defining the separate issues and the facts essential to a recovery under each theory, to enable a jury to intelligently consider the questions involved and arrive at a fair

verdict. Under such circumstances, it is especially necessary for the court in giving instructions to keep the issues of primary and humanitarian negligence separate. Furthermore, under such circumstances, it is the duty of the plaintiff seeking a recovery to offer instructions giving the jury proper information and directions concerning the right of recovery he claims under the several separate and distinct charges of negligence he makes, or to submit the case only on one charge. We reverse and remand this case because the instruction given was confusing and misleading by reason of commingling issues of primary negligence and negligence under the humanitarian rule. However, we would not hesitate to reverse and remand it, if proper objections had been made and exceptions taken and preserved by properly stating the matter in a motion for new trial, on the ground that by instructing upon plaintiff's damages only and failing to offer instructions defining the issues in this case submitted upon both primary and humanitarian negligence, the jury was necessarily so confused and misled as to what facts were necessary for a recovery for plaintiff upon any theory that it would be impossible to tell whether or not they could reach a proper verdict.

Appellant further complains of refusing his withdrawal instruction on failure to warn and of giving certain instructions at the request of his codefendant Sims. However, upon retrial plaintiff will, no doubt, offer instructions setting out every proper theory, upon which the jury may, under the evidence, find a verdict in his favor, and the other instructions complained of will probably not be offered in the same form so that it will not be necessary to discuss them here.

II. There is one further matter which, in view of a retrial, requires consideration. Appellant contends that the action of the court in permitting plaintiff and defendant Sims to testify concerning the course, movements and speed of his truck prior to and up to the time of the collision was error because they were both disqualified to testify, concerning anything the driver of his truck did, by Section 1723, Revised Statutes 1929, since this driver died prior to the trial. Plaintiff described these movements in detail, from the time appellant's truck passed another car until it ran head-on into the Sims' car, but summarized them as follows: "The course of the light going 600 to 700 feet was, first, it swerved to the left around the vehicle, then to the right, then back to the left, then down the center of the highway." Plaintiff judged the speed of the appellant's truck "at fifty or sixty miles an hour, because of the short space it took to close the distance between the two headlights" and said that "it was a newspaper truck, Post-Dispatch." Appellant objected to plaintiff's "testifying as to the movements of the truck of defendant William

Berberich or the action of the driver for the reason that he is dead.''
Of course, the movements described, of the truck while traveling
almost a quarter of a mile, were due to the action of the driver in
steering it. Defendant Sims also testified to seeing the headlights of
appellant's truck and his version of its movements and as to the posi-
tion of appellant's truck at the time of the collision. Appellant ob-
jected to defendant Sims' testimony upon the same ground that he
objected to plaintiff's.

■ Section 1723, Revised Statutes 1929, provides ''that in ac-
tions where one of the original parties to the contract or cause of
action in issue and on trial is dead . . . the other party to such
contract or cause of action shall not be admitted to testify.'' There
is certainly nothing in this language to disqualify one defendant
when the agent of his codefendant is dead. There is no ''cause of
action in issue and on trial'' between a defendant and his codefend-
ant when they are both sued by plaintiff as joint tortfeasors. In such
a case, a codefendant cannot be the other party to the cause of ac-
tion on trial within the meaning of the statute. We, therefore, hold
that defendant Sims was not disqualifed as a witness to any extent
by this statute.

■ To sustain his contention that plaintiff was disqualified, ap-
pellant cites Leavea v. Southern Ry. Co., 266 Mo. 151, 181 S. W. 7,
in which this court upheld a decision of the St. Louis Court of Ap-
peals, Leavea v. Southern Ry. Co., 171 Mo. App. 24, 153 S. W. 500,
holding that this statute applied to actions *ex delicto* and disapproved
a decision of the Kansas City Court of Appeals to the contrary.
[Drew v. Wabash Ry. Co., 129 Mo. App. 459, 107 S. W. 478.] In
both the Drew and Leavea cases, a railroad was sued for damages for
the plaintiff's injuries from an assault by one of its employees. In
both cases, the wrongdoing employee was dead at the time of the trial
and each plaintiff's right to testify was challenged because of the
statute. In the Drew case, the Kansas City Court of Appeals held
that plaintiff was not disqualified. The court recognized that a party
to a contract made with an agent is disqualified by the latter's death,
but said: ''We do not think that in this case the plaintiff was dis-
qualified to testify by reason of the death of the conductor, as this
is not an action on contract but *ex delicto*; nor was he a party to the
(contract or) cause of action within the meaning of the statute.'' In
the Leavea case the St. Louis Court of Appeals reached the opposite
conclusion, saying:

''Many have thought that the statute applies to matters *ex con-
tractu* only, but it does not so provide in terms, and in a most recent
case our Supreme Court enforced its rule, where the particular ques-
tion in judgment arose *ex delicto*, for the gravamen of that cause and
on which the witness was declared to be incompetent to speak

sounded in tort, as for fraud and deceit. The purpose was to set aside a judgment procured through an alleged fraud perpetrated on a court in the State of Illinois. [See Lieber v. Lieber, 239 Mo. 1, 143 S. W. 458.] We believe that the proper view is, that the disability as a witness to the cause of action in issue and on trial, where the other party to that cause of action is dead and the survivor is a party to the suit, is coextensive with every occasion where such cause of action may be called in question. Such was the ruling by the Supreme Court in Chapman v. Dougherty, 87 Mo. 617.

"The cause of action in issue and on trial here is the wrong perpetrated by defendant railroad company through its agent, Teague, in assaulting and injuring the plaintiff. Generally speaking, the term 'cause of action' in substance signifies a plaintiff's primary right and defendant's wrongful violation of that right. . . . Corporations are artificial persons and may speak and act only through their agents. In view of this and to effectuate the purpose of the statute above quoted, the courts have declared the rule that, when a corporation is in fact 'other party' to the cause of action under the statute and the agent representing the corporation about the transaction in suit is dead, such agent shall be regarded, for the purposes of the case, as the 'other party' and stand in the place of the corporation with respect to the cause of action in issue and on trial. [See Williams v. Edwards, 94 Mo. 447, 7 S. W. 429.] In this view, it seems that Teague, defendant's watchman, should be regarded as the 'other party' to the cause of action here on trial, and that the fact of his death operates to disqualify the plaintiff as a witness, for such rule alone will work the equality which the statute designs with respect to the power of the parties to the cause of action to speak thereon."

In adopting the view of the St. Louis Court of Appeals, this court did not discuss the question of whether a wrongdoing employee could be regarded as a party to the "cause of action in issue and on trial." This court merely said that it was "unable to reach the conclusion that the disqualification called for in the above section of our statute does not apply in actions *ex delicto*. We can conceive of no good reason for applying the provisions of said section to actions upon contract, which would not apply with equal force to circumstances like those at bar." It would seem that, in holding the "cause of action," referred to in the statute, was not limited to actions *ex contractu*, the court was right. But holding that the wrongdoing agent was a party to the cause of action on trial because, acting in the course of his employment for the defendant, he committed a wrongful act for which the defendant was liable is another matter. Williams v. Edwards, which the Court of Appeals cited, was a contract case. Whether there is a material difference between saying that a

contracting agent is, within the meaning of the statute, a party to the contract he negotiated and saying that a wrongdoing employee is a party to the suit against his employer, we will, hereinafter, discuss.

Our Courts of Appeal have followed the Leavea case in a number of decisions. Burns v. Polar Wave Ice & Fuel Co. (St. Louis Court of Appeals), 187 S. W. 145; Brunk v. Metropolitan Street Ry. Co. (Kansas City Court of Appeals), 198 Mo. App. 243, 200 S. W. 443; Knickerbocker v. Athletic Tea Co. (St. Louis Court of Appeals), 285 S. W. 797. See, also, Darks v. Grocer Co. (Springfield Court of Appeals), 146 Mo. App. 246, 255, 130 S. W. 430.] This court further considered the matter in State ex rel. Thomas v. Daues, 314 Mo. 13, 283 S. W. 51. That case approved the holding of the St. Louis Court of Appeals, that an engineer of a railroad train, which had run over and killed plaintiff's wife, was a competent witness, as to the occurrence, in a suit by plaintiff against the railroad for damages for his wife's death. The court stated the contentions and its conclusion, as follows:

"The relator further urges that our court has ruled that the statute (R. S. 1919, sec. 5410) applies to actions *ex delicto* as well as to actions *ex contractu*. We have so ruled. [Leavea v. Railroad Co., 266 Mo. 151; Lawhon v. Laboratories, 252 S. W. 1. c. 48.] There are like authorities elsewhere: 28 Ruling Case Law, p. 494; Note to Leavea v. Ry. Co., L. R. A. 1916D, p. 811 et seq. The propriety of these rulings is not material under this point, with the question we have for discussion here. The question in hand now is, whether or not the cause of action which the husband brought for the negligent killing of the wife is the same cause of action which the wife had for her negligent injury, the moment before her death. . . .

"In the case out of which this action grows, Mrs. Thomas was not a party to any contract, nor could she be a party to the 'cause in issue and on trial.' In other words she could not be a party to a suit to recover a penalty for her own death. The statute made the husband the party to 'the cause of action in issue and on trial,' and he was much alive at the trial."

The Lawhon case, referred to in which the Leavea case was cited, was also an action for wrongful death, and there an agent of the defendant corporation was held disqualified. The rejected testimony, however, dealt largely with a contract which it was contended made the deceased an independent contractor. The view of the matter, which this court took in State ex rel. Thomas v. Daues, supra, if the rule of the Leavea case stands, would make possible an anomolous situation should the engineer die and the question arise as to the competency of the surviving husband. For example, suppose the husband and wife were struck by a train while crossing the track in

an automobile, and the wife was killed but the husband was only injured. Then the husband, under the Thomas case, could testify, as to what the deceased engineer did or failed to do, in his suit for the wrongful death of his wife; but, under the Leavea case which the Thomas case evidently approved because of its effort to avoid the rule it established by reasoning that the husband's cause of action was not the same as the wife's for injuries, he could not testify to the same facts in his suit against the same defendant for his own injuries. It does not seem that there is any logical reason why a plaintiff, who has the same interest in the result of each suit, where the basis of each is the same wrongful act and who would testify to exactly the same facts in each, should be allowed to tell what happened in one suit but not in the other.

In this connection, it is interesting to note the Kentucky case of Souther v. Belleau, 262 S. W. 619, 36 A. L. R. 956, which was an action by a wife for the wrongful death of her husband caused by defendant shooting him. It was held that defendant was disqualified from testifying, as to what took place, to show self-defense. The Kentucky statute, however, provided: "No person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by . . . a person who is of unsound mind or dead." [See 1 Wigmore on Evidence, 883, sec. 488.] It would seem that this statute, by its express terms, covers torts resulting from acts done or omitted to be done and likewise covers acts done by agents and servants as well as parties. While most states have statutes providing disqualifications in case of death, because of the difference in the situations they attempt to cover, the decisions of other states are not helpful in construing our statute. It has been pointed out that the disqualifying provision "was carved out of the old disqualification and was allowed to perpetuate within a limited scope the principle of the discarded rule" (1 Wigmore on Evidence, 1005); and that in abolishing the illiberal and unnecessary restrictions of the common law respecting qualifications of witnesses "these changes have often embodied in the same enactment the change of diverse rules." [1 Wigmore, 865.] The survival of any part of the interest disqualification has been criticized (1 Wigmore, 1005); and it has been said that "it is based on a fallacious and exploded principle, it leads to as much or more injustice than it prevents, and it incumbers the profession with a mass of barren quibbles over the interpretation of mere words." [1 Greenleaf on Evidence, 493, sec. 333b.]

A consideration of the history of the rule established by our statute may prove helpful in considering its limitations. Under the common law, interest as a party or otherwise disqualified one from being a witness. [1 Wigmore on Evidence, 985, chap. 23; 1 Greenleaf on

Evidence, secs. 411 and 416.] This disqualification even as to parties originally applied also to criminal cases. [40 Cyc. 2245; 1 Wigmore on Evidence, 994 and 1008.] In Missouri the disqualification of the accused in criminal cases was removed by Section 3692, Revised Statutes 1929, enacted 1877, Laws 1877, page 356. Early Missouri decisions recognize the disqualification of interest in civil cases. [Rector v. McNair, 1 Mo. 471; Levy v. Hawley, 8 Mo. 510; Horine v. Horine, 11 Mo. 649.] The disqualification of witnesses in civil cases was removed in 1855 by a statute which originally read as follows: "Sec. 1.—No person offered as a witness shall be excluded by reason of his interest in the event of the action. Sec. 2—Any fact which might heretofore be shown to render a witness incompetent may be hereafter shown to affect his credibility; and, in all questions affecting the credibility of a witness, his general moral character may be given in evidence." [Chapter 168, p. 1576, R. S. 1855.] However, under further provisions of this chapter, "a party to the action, or any person for whose immediate benefit the action is prosecuted or defended" remained incompetent to testify as did an "assignor of an account, judgment or thing in action, concerning facts occurring anterior to the assignment." Even before this partial removal of the common-law disability, an exception was recognized that a party was a competent witness where the defendant was guilty of a tortious act and no other evidence could be had. This was applied in actions for damages where a bailee broke into and stole property committed to his care and in cases where an innkeeper was sought to be held for the robbery of his lodgers. [Sparr v. Wellman, 11 Mo. 230.]

In the Revision of 1865, the disqualification of parties was removed and the statute was changed to read as follows:

"Section 1. No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credit (credibility); provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party shall not be admitted to testify in his own favor; and where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator; provided, further, that in actions for the recovery of any sum or balance due on account, and when the matter at issue and on trial is proper matter of book account, the party living may be a witness in his own favor, so far as

to prove in whose handwriting his charges are, and when made, and no further.'' [Sec. 1, Chap. 144, p. 586, R. S. 1865.]

In 1887 there was added to the first proviso, that where one of the original parties was dead ''the other party shall not be admitted to testify in his own favor'' the following: ''Or in favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor, except as in this section provided.'' [Laws of 1887, p. 287.] The statute has remained unchanged since that amendment and is the present Section 1723, Revised Statutes 1929.

It will be seen, therefore, that the history of our Missouri statute is as follows:

First: The disqualification of interest was removed as to witnesses but retained as to a party or those from whom a party derived his claim by assignment.

Second: The disqualification was then removed as to a party except to testify in his own favor ''where one of the original parties to the contract or cause of action in issue and on trial is dead'' or insane; or except to testify in his own favor where an executor or administrator was a party unless there was a living party to the contract or unless to identify his handwriting in a book account.

Third: The former statutory disqualification of an assignor which was at first removed was re-enacted.

This latter disqualification was not wholly based on the rule of interest because an assignor might have no interest whatever at the time of the suit. Thus before the statute, a party to a note in suit was held competent as not interested if he had been released from liability or if his liability was not affected by the result. [Bank of Missouri v. Hull, 7 Mo. 273; see, also, 40 Cyc. 2247.] The decisions of this court, construing the statute, have been far from harmonious. This has been partly due to difference of opinion as to its purpose. In many cases it is said that our statute was ''purely remedial in its nature, its object being to remove a disability which theretofore existed at common law; and that the proviso creates no disability, but only limits the operation of the enabling provision;'' that it is ''a qualifying and not a disqualifying statute;'' and that it is not the usual interest of a witness as a party to the suit which disqualifies him, but it is his ''interest as the only surviving party to the suit,'' which because of this circumstance is assumed to be an exceptional interest. [Rauch v. Metz (Mo.), 212 S. W. 357; Wagner v. Binder (Mo.), 187 S. W. 1128; Weiermueller v. Scullin, 203 Mo. 466, 101 S. W. 1088; Signaigo v. Signaigo (Mo.), 205 S. W. 23; Allen Estate Assn. v. Boeke, 300 Mo. 575, 254 S. W. 858.] In other cases

the idea of equality and prevention of false swearing was emphasized. These cases say that the spirit of the statute as well as its letter must be considered; that it is intended to prevent injustice which would result from the advantage one party would have if permitted to testify without fear of contradiction; that to accomplish this purpose whenever the lips of one person, who knows about a matter in issue, were sealed by death the lips of the other must be sealed by law; and that it is a disqualifying as well as a qualifying statute. [Chapman v. Dougherty, 87 Mo. 617; Green v. Ditsch, 143 Mo. 1, 44 S. W. 799; Banking House v. Rood, 132 Mo. 256, 33 S. W. 816; Edmonds v. Scharff, 279 Mo. 78, 213 S. W. 823; Scott v. Cowen, 274 Mo. 398, 195 S. W. 732; Griffin v. Nicholas (dissenting opinion), 224 Mo. 275, 1. c. 328, 123 S. W. 1063; Carroll v. United Railways Co., 157 Mo. App. 249, 137 S. W. 303; Taylor v. George, 176 Mo. App. 215, 161 S. W. 1187.] There is some basis for both views. As pointed out in the case of an assignor, or a party to a note not interested because his liability is not affected, the statute does disqualify a witness who was competent under the common-law rule of interest. However, it is to be feared that absolute equality of opportunity to produce testimony in a shibboleth impossible of attainment. It is like the theoretical condition of evenly balanced testimony sometimes referred to in instructions. Will not courts more often reach the truth by properly weighing the evidence which can be produced? That was the reason for abolishing the disqualification of interest. Some states have as a solution for this situation provided that declarations of the deceased party concerning the transaction may be admitted, others that the living party cannot recover without corroboration, and still others that the living party may testify, under exceptional circumstances, within the discretion of the court. [1 Wigmore, 1007, sec. 578.] For these reasons, we should, at least, hesitate to extend the statute by construction beyond its terms.

The most diversity of opinion seems to have arisen in cases involving the competency of agents who have dealt with a deceased person. In Stanton v. Ryan, 41 Mo. 510, it was held that the defendant's wife, who made a contract as his agent, was competent, although the other party to the contract was dead. On the other hand, in Banking House v. Rood, 132 Mo. 256, 33 S. W. 816, it was held that an agent of the bank could not testify about a transaction, in which a note to it was taken, in a suit by the corporation to enforce the note, where the maker of the note was dead. Again, in Clark v. Thias, 173 Mo. 628, 73 S. W. 616, this court reached the opposite conclusion. There are other cases in this court and in the courts of appeal which have followed each of these contradictory holdings. However, in Wagner v. Binder (Mo.), 187 S. W. 1128, 1. c. 1158, Banking House v. Rood was expressly overruled. The Wagner case was a tort ac-

tion based on fraudulent representations made to the plaintiff's agent by a deceased, against whose estate it was sought to recover damages. This court held that the agent could testify to these representations. This court said: "The statute is satisfied when death silences the mouth of one of the parties and the courts close the lips of the other without going further and destroying competent testimony showing the liability of the deceased party." The court further said that it was not the purpose of the statute to disqualify a witness who was competent at common law and that agents were competent witnesses, even under the common-law rule of disqualification for interest, as to what they did within the scope of their employment. [See 1 Greenleaf on Evidence, secs. 411 and 416; see, also, Hanley v. Blanton, 1 Mo. 49; Stothard v. Aull, 7 Mo. 318; Burd v. Ross, 15 Mo. 254.] But the court recognized that, although the death of the defendant does not exclude the contracting agent, the converse of the proposition was not true; but that the death of the contracting agent does exclude the surviving party who contracted with him. [Williams v. Edwards, 94 Mo. 447, 7 S. W. 429; Leach v. McFadden, 110 Mo. 584, 19 S. W. 947; Hollmann v. Lange, 143 Mo. 100, 44 S. W. 752; Wendover v. Baker, 121 Mo. 273, 25 S. W. 918; Sidway v. Missouri Land & Live Stock Co., 163 Mo. 342, 63 S. W. 705; Central Bank v. Thayer, 184 Mo. 61, 82 S. W. 142; Charles Green Real Estate Co. v. Building Co., 196 Mo. 358, 93 S. W. 1111.] The holding of the Wagner case that the plaintiff's agent was not disqualified by the death of the defendant with whom the agent dealt has since been followed by this court. [Allen v. Jessup (Mo.), 192 S. W. 720; Orthwein v. Nolker, 290 Mo. 284, 234 S. W. 787; Darby v. Northwestern Mutual Life Ins. Co. (Mo.), 293 Mo. 1, 239 S. W. 68; Curtis v. Alexander (Mo.), 257 S. W. 432; and Allen Estate Assn. v. Boeke, 300 Mo. 575, 254 S. W. 858, approving the Wagner case; also 21 A. L. R. 928, and 54 A. L. R. 264, for notes discussing Missouri decisions.

The distinction between these two lines of cases, however, may be explained as follows:

First.—In the Wagner case and those which follow it, it is held that the agent of a party is not disqualified, because such agents were not disqualified under the exception to the interest rule recognized at common law.

Second.—In the other cases, following Williams v. Edwards, which hold that the death of the contracting agent excludes the surviving party who contracted with him, it is not the contracting agent who is being disqualified as a witness, for he is the one who is dead, and therefore there is no conflict with the common-law rule that agents are competent witnesses whether the principals are living or dead.

It is the other party to the contract or cause of action, who is being disqualified by the contracting agent's death, and not the agent.

Third.—The result of holding that the original party to the contract, within the meaning of the statute, whose death disqualifies the other party, is the person (contracting agent) who negotiated the contract, rather than the person in whose interest it is made, necessarily makes the death of that agent disqualify the original party, who contracted with him and *who was disqualified at common law* because of his interest as a party; but the death of an original party does not necessarily require the disqualification of the contracting agent (of the other party), *who was a competent witness at common law* and is not specifically disqualified by the statute.

There seems to be some logical basis for holding as a survival of a part of the interest rule so as to disqualify a party in cases of contracts where the party, who is seeking to enforce a contract and is therefore interested, negotiated solely with the agent of the other party, that the contracting agent was the other party to the contract. Contracting agents are parties, at least, to the making of the contracts they negotiate. In fact, the terms of the statute seem to apply more to contracts and to actions in some way growing out of contractual relations than to actions purely *ex delicto*. The part of the statute relating to suits where an executor or administrator is a party seems to be specifically limited to contracts because it says the other party cannot testify "unless the contract in issue was originally made with a person who is living." This idea is further emphasized by the Amendment of 1887 disqualifying the other party to the contract or cause of action from testifying "in favor of any party to the action claiming under him" and also disqualifying a party to the suit whose action or defense is derived from one subject to the disqualification. These provisions would seem to indicate that the cause of action spoken of there, at least, is an assignable or transmissible cause of action and not a pure tort based upon wrongful or negligent acts resulting in personal injuries, which is not assignable. [See Remmers v. Remmers, 217 Mo. 541, l. c. 561, 117 S. W. 1117; Snyder v. Railroad, 86 Mo. 613; Beechwood v. Railroad, 173 Mo. App. 371, 158 S. W. 868, and cases cited.] But as we have noted, the statute, as originally enacted and as it still stands, says that when "one of the original parties to the contract or cause of action in issue and on trial is dead" the other party is disqualified. This places no limitation in its application upon the nature of the cause of action. It is broad enough to cover any cause of action *ex delicto* as well as any cause of action *ex contractu*. We cannot, under its terms, say that it was not meant to cover all actions *ex delicto*.

We do not, however, think there is any reason to justify its ap-

plication to actions *ex delicto* for personal injuries, except as to the actual parties to the cause of action in issue and on trial. While it may logically be said that a deceased contracting agent was in a sense a party to the contract in issue, it cannot by any stretch of language or reasoning be logically said that a deceased wrongdoing servant was "one of the original parties" to the cause of action on trial. This follows also from the very nature of the different relations of principal and agent and master and servant. "Agency contemplates contractual liability arising from the acts of the agent. The maxim is *qui facit per alium facit per se,* whereas tort liability is properly described by the phrase *respondeat superior.*" [21 R. C. L. 818, sec. 2.] The essential distinction is "that the agent is employed to establish contractual relations between his principal and third persons, while the servant is not. Rather, the servant deals with things; if he deals with persons it is not to bring about contractual relations." [2 C. J. 423, sec. 9.] Moreover, it is apparent that the duties of a contracting agent to bring about contractual relations necessarily involve secrecy and that therefore no one, except he who conducts the negotiations, will usually be in a position to know anything about the transaction. These matters are not proclaimed from the housetops nor through the streets. To let others know they were even in progress would often defeat their purpose. In the case of an alleged verbal contract there is often nothing visible which will contradict or corroborate. On the other hand, the negligent or wrongful acts of a servant in the scope of his employment, for which a master may be held responsible for personal injuries occasioned to a third party, are usually open for all the world to see. Four disinterested witnesses did see all that happened in this case. Many others were soon on the scene and observed the position in which the cars remained. The marks of plaintiff's injuries were, of course, observable and remained so even at the trial.

The argument in the Leavea case that, because the defendant there was a corporation which could act only through agents and employees, it was necessary to disqualify the plaintiff, who was injured by a servant of the corporation, is not a sound argument for applying the disqualification to personal injury tort cases. It will be noted that the defendant here is not a corporation but an individual. We do not see that he is in any better position to meet the evidence of what his driver did than a corporate defendant would be; nor do we see how a corporate defendant would be in any different position, so far as meeting such evidence is concerned, than is this individual defendant. Yet, how can it be said, from the mere fact that defendant cannot be a witness himself, that his deceased driver was "one of the original parties to the cause of action in issue and on trial"

here? The fact the driver might have been, before his death, jointly liable with appellant would not make him such a party within the disqualification of the statute. Even in contract cases, this court has long held that "the fact that one of the adverse parties to the contract or cause of action sued on is dead, does not, of itself, disqualify the opposing party as a witness, provided a surviving adverse party remains." [Wahl v. Cunningham, 320 Mo. 57, l. c. 81, 6 S. W. (2d) 567, l. c. 585; Williams v. Perkins, 83 Mo. 379, l. c. 385; Fulkerson v. Thornton, 68 Mo. 468.]

If the statute is applied to such employees, a plaintiff injured in an automobile accident on a highway, where he has no witness but himself, might commence an action against the defendant whose employee injured him, and, if this employee died before the case was reached for trial, be without remedy because he could not testify (as held in the Leavea case) and had no other proof. On the other hand, where an injured plaintiff died (not as a result of the injury) after he had commenced suit for his injuries and the cause is revived and proceeds, other witnesses being available to his administrator, if the defendant has no other witness than his employee, who is alleged to have been negligent, and if he is disqualified (as held in the Lawhon case), it would be impossible to make a defense. It seems that a plaintiff, in an action for personal injuries, cannot be said to be disqualified under the statute, from testifying concerning what an employee (of the defendant) who injured him said or did, by the death of the employee, without writing into the statute an additional disqualification which is not there. We therefore hold that plaintiff is not disqualified, in this case, from testifying either as to the speed or as to the course the defendant's driver drove his automobile before it collided with the car in which he was riding, or to identify the automobile, which ran into that car, as defendant's automobile. Insofar as Leavea v. Southern Ry. Co., supra, holds to the contrary, it is overruled. It follows that the decisions of the Courts of Appeal, above referred to, which have been decided upon the authority of the Leavea case are likewise disapproved. The judgment is reversed and the cause remanded. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.