## A. P. FORD, Respondent, v. HARRY C. McCLAIN, Administrator, Appellant.

**Kansas City Court of Appeals, June 3, 1912.**

1. **SURETY: Consideration: Signing Afterwards.** Where a surety signs a note that has been already executed and delivered and is a past transaction, without any new consideration, it is without consideration as to him. But if at the time the note is given, it is a part of the contract out of which the note arose that the surety will be procured to sign, and he does so, no new consideration is necessary and he is bound.

2. ———: ———: ———: ———: **Witnesses: Competency.** A vendor and vendee in consummating the sale of a mine wherein the vendee, who executed and delivered a note for part of the purchase money, agreed with the vendor, as part of the contract, that he would get a surety, not present, to afterwards sign the note, and the surety afterwards did sign it, and then died; it was *held*, that the vendor and vendee, as well as their agents, were competent witnesses in an action brought on the note against the estate, and that their disqualification was not contemplated by the statute on witnesses.

3. ———: ———: ———: Other Parties: Independent Trans-
actions. The surviving party to a contract in suit, or his
agent, is not disqualified in all instances in actions against the
deceased's estate. They may testify to transactions had with
others to which the deceased was not a party, and with which
he had no connection and of which he had no knowledge.

Appeal from Jackson Circuit Court.—*Hon. J. E. Goodrich*, Judge.

AFFIRMED.

*W. R. Thurmond* and *Fyke & Snider* for appellant.

(1) The court erred in holding that deceased was liable upon the note. It is undisputed that the note was executed by Bruner and Hedrick and delivered to Ford, and the whole transaction closed before the note in controversy was ever signed by McClain, if it was signed by him at all, and there is a total absence of any competent testimony to show if said note was signed by McClain that there was ever any previous agreement on the part of McClain to sign the same, or that the signing thereof by him was any part of the original consideration moving to Ford for the execution of the bill of sale to the mining property, hence even if McClain signed the note it is without consideration and imposes no liability upon him. McMahan v. Geiger, 73 Mo. 145; McFarland v. Heim, 127 Mo. 327; Higgins v. Harvester Co., 181 Mo. 300; Lowenstein v. Sorge, 75 Mo. App. 219; Adams v. Huggins, 78 Mo. App. 219. (2) The evidence clearly shows that if McClain signed the note it was signed without the knowledge of either Bruner or Hedrick; such being the case the addition of the signature of McClain to the note was an alteration thereof and released both Bruner and Hedrick, or such of said parties as had no knowledge of the execution of the note by McClain if he did

execute it. Gardner v. Gibbons, 91 Mo. App. 412. (3) The court erred in permitting the plaintiff, Ford, and the witnesses, Scott and Tedford, to testify against the estate of the deceased to anything that transpired before the administrator was appointed. Ford was a party to the suit and the testimony shows that both Scott and Tedford were directly interested in the result of the suit and were agents of Ford. Biehrs, Admr., v. Brockman, 70 Mo. App. 503; Curd v. Brown, 142 Mo. 82; Edwards v. Warner, 84 Mo. App. 200; Newspaper Co. v. Jung, 81 Mo. 577; Kersley v. O'Day, 173 Mo. 560; Green v. Ditsch, 143 Mo. 1; Brewing Co. v. Rahling & Manke, 133 Mo. App. 65; Lesch v. McFadden, 110 Mo. 584.

*J. W. McAntire* and *Dudley W. Eaton* for respondent.

There can be no principle of law invoked by the defendant in this case by which he could avail himself of right to have any credit whatever upon the note at bar, by reason of the fact that Bruner had successfully, in his suit, obtained a reduction upon the two notes signed by himself and Hedrick and not signed by Carey McClain. In other words, it appears to us that whatever reduction Bruner and Hedrick were entitled to upon the two five thousand dollar notes, they obtained in that suit. It was for their benefit and not for Carey McClain. The judgment rendered in the Waite case was a finality only for such of the claims and defenses as were actually litigated in the suit in Jasper county. Black on Judgments, sec. 751; Crowell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; O'Connor v. Carney, 10 Gray (Mass.) 231; Latta v. Visel, 37 Neb. 612, 56 N. W. 311; Read v. Cross, 48 Pac. 491. The statute does not exclude the living party from testifying where his evidence relates to transactions and conversations had with others to which the deceased

was not a party and with which he had no connection. Kirton v. Bull, 168 Mo. 622; Nugent v. Curran, 77 Mo. 323; Eyermann v. Piron, 151 Mo. 107; Banking House v. Rood, 132 Mo. 256; Orr v. Rode, 101 Mo. 387; Wade v. Hardy, 75 Mo. 394.

ELLISON, J.—This controversy involves the liability of defendant's intestate on a promissory note executed to plaintiff for $3500, dated February 25, 1903, and signed by R. E. Bruner, C. L. V. Hedrick and Carey McClain. The case was tried by the court without the aid of a jury and judgment rendered for plaintiff.

It appears that plaintiff sold to Bruner and Hedrick a zinc mine in Jasper county for $30,000. Of this amount $15,000 was paid in cash, $1500 in stock in a corporation, two notes of $5000 each, and one for $3500—the latter being the one in controversy. When the parties met in Joplin, Mo., to consummate the sale, a question came up about security for the deferred payments and a heated dispute arose on that proposition. Finally it was agreed, and a writing to that effect signed, that if Bruner and Hedrick should sell the mine before either of the notes became due, all of them remaining unpaid should immediately become due. In other words, a sale of the property of Bruner and Hedrick would have the effect of maturing all the notes.

So far there is no dispute. But plaintiff insists that it was, in addition, likewise agreed that the deceased, a relative of Bruner's, not present, and residing in Kansas City, should afterwards sign the note in controversy. Defendant denies that agreement and insists that if deceased signed the note, it was after the transaction was closed, and was without consideration; insisting on the legal proposition that where a surety signs an obligation arising out of a transaction

164 App.—12

closed and completed before he signed, there must be some new consideration to support it. The latter proposition is correct. But if at the time the deal is consummated it is agreed that a note for a deferred payment is to be signed by another party, and in compliance therewith the vendee secures the signature of the other party, there is ample consideration therefor, since it is merely carrying out and giving effect to one item of the final contract of sale. [Montgomery County v. Auchley, 92 Mo. 126; Adams v. Huggins, 73 Mo. App. 140, s. c., 78 Mo. App. 219; Hill v. Coombs, 92 Mo. App. 242, s. c., 93 Mo. App. 264.]

The controversy, in the main, is one of fact. The proof was ample that deceased signed the note, and the question is, was there evidence at the trial tending to show that such was the understanding at the time the purchase of the mine was completed. We think there was. But defendant challenges the competency of the witnesses who testified to this, on the ground of McClain being dead; relying upon the statute disqualifying one party to a contract where the other party is dead (Sec. 6374, R. S. 1909). These witnesses were Scott and Tedford, whom defendant claims were interested in the way of commissions and were agents for plaintiff.

We do not think the statute applies to the peculiar facts of this case. Here was a contract made between other parties than deceased and in which he had no part. All of the parties to that contract were alive and were witnesses at the trial. The contract there made was that Bruner and Hedrick, the purchasers of the mine, would get deceased, who, as we have said, was not present, to sign the note. It was a contract collateral to the one in suit, supporting its validity by showing a consideration. But not a consideration of advantage moving to deceased, or in which he was concerned; but it was that other sort of consideration whereby there was disadvantage to, or a parting

with some value by, the other party. Suppose that upon agreement A sells and delivers his horse to B for $100, B giving his note to A with the understanding it will be signed by C (who knows nothing of the matter) on A presenting it to him. C is not a party to that contract and knows nothing of it, and, if alive, could not testify to anything which had transpired, because he knew nothing of it. It seems clear that if C should sign the note and die, the parties to that contract would not be disqualified by the statute.

Though deceased was not a party to that contract, it is said he is a party to this cause of action, and therefore the other party is disqualified by the statute. We think not. The statute does not disqualify the living party from testifying concerning "transactions had with others and to which the deceased party was no party and with which he had no connection, and of which he had no knowledge." [Martin v. Jones, 59 Mo. 181, 187; Eyermann v. Piron, 151 Mo. 107.] The issue whether an agreement was made at the time the sale was closed that deceased was thereafter to be got to sign the note, was an issue exclusively between living parties. [Nugent v. Curran, 77 Mo. 323, 325.]

The witness Scott was allowed to make the statement that deceased told him at some time prior to the consummation of the sale that he would help Bruner and Hedrick to buy the mine. Conceding that this statement of the witness as to what deceased himself had said was incompetent, we think it clearly was harmless. To have any bearing on the case it must have referred to signing the note, and that fact is only feebly denied. It was proved beyond question, by competent testimony, that he did sign it, and it would be trifling with justice to reverse the judgment for allowing that statement to be made.

What we have written disposes of the points properly in the case. We will, however, remark, in answer

to suggestions about attempts to bind deceased by contracts made in his absence and to which we was not a party, that no object of that kind appears. The evidence as to the agreement to get deceased to sign the note, was merely to establish the entire contract of sale of the mine as it was finally closed, which included that deceased was to sign the note. The only evidence binding an obligation upon deceased was that afterwards he *did* sign it.

The judgment is affirmed. All concur.