ARDELL ROSS, Administrator of Howard Wilson Ross, Plaintiff-in-Error, v. G. L. GRIGGS, Administrator of Aubrey Joe Griggs, Defendant-in-Error. —296 S. W. (2d) 641.

Western Section at Jackson.   June 8, 1955.

Petition for Certiorari denied by Supreme Court October 7, 1955.

Rehearing denied by Supreme Court December 9, 1955.

492

Adams & Adams, Humboldt, for plaintiff in error.

Robert P. Adams, L. L. Harrell, Trenton, for defendant in error.

CARNEY, J.   This was a suit for damages arising out of an automobile accident in which Aubrey Joe Griggs and Howard Wilson Ross were both killed.   The administrator of Joe Griggs brought suit for damages against Ardell Ross, administrator of Howard Wilson Ross, for the death of Joe Griggs.   There was a jury verdict in favor of the plaintiff for $10,000 approved by the Trial Judge and Ardell Ross, administrator, brings this appeal in error.

On February 10, 1954, Joe Griggs, a young man unmarried about 23 years of age, arrived home from the army.   That evening his friend Howard Ross came by to visit Griggs at his home in Humboldt.   About 8:15 p. m. they left the Griggs' home with Ross driving the 1949 Ford which was registered in Ross's name.

The parties were not seen thereafter until about 11:00 p. m.   The automobile was found wrecked against a tree. Griggs was found dead in the right front seat of the car and Ross, the owner of the car, was found dead on the ground and somewhat under the car.   One witness

thought Ross was on the ground on the left side and other witnesses thought that Ross was on the ground under the right side.

The accident occurred about four miles south of Bradford, Tennessee, on U. S. Highway 45 E which runs generally in a north and south direction and at this point the highway makes a bend to the left or northwest. The tree was located some 19 feet east of the east margin of the highway just opposite the place where the road bends to the left. The concrete highway is 20 feet wide at this point.

Tracks led from the east margin of the concrete highway to the back end of the car. The easternmost track or the one on the right was approximately 75 steps long and the west or left track was approximately 41 steps long. All the circumstances indicated that the car was traveling north and instead of following the highway as it turned to the left, the car went on straight into a field and against the tree. The right wheels of the car left the concrete pavement some 30 to 40 steps before the left wheels left the pavement.

The car, after it left the pavement, ran straight north and head-on into the tree striking the tree a little to the right of the center of the front bumper. The motor was thrown out of the car some 40 feet over in the field. The front bumper was driven back up under the car and had pinned the feet of Griggs which were sticking down through the place where the floorboard normally would have been on the right side of the front seat.

The proof is not clear whether Griggs' feet were forced through the floorboard or whether the floorboard was thrown out by the impact. The glove compartment on

the right side of the dash was driven back pinning Joe Griggs' body against the front seat. The door on the left side was open and the door on the right side was partly open and wedged so tightly against the ground that it could not be opened.

Ross's watch was broken and the hands stopped at 10:30 indicating that the wreck happened at that time. Passers-by discovered the car shortly thereafter. Griggs' body could not be removed from the car because the right door was jammed too much. It was necessary to bend the steering wheel up and forward and to remove some of the padding and upholstery from the front seat on the driver's side in order to remove the body of Griggs through the left door.

Damage to the bark of the tree higher up indicated that the car had jackknifed with the back end being thrown up and some part of the top of the car striking the tree and that the back end of the car skidded around to the left and back to the ground.

The plaintiff's declaration was in two counts. The first count alleged that the defendant's intestate, Howard Ross, was driving the car and guilty of common law negligence resulting in the death of Griggs. The second count alleged the violation of Code Sections 2681—"Reckless Driving" and Section 2682 relating to excessive speed and inadequate brakes. The defendant pleaded not guilty.

There were no eye witnesses to the collision. At the conclusion of the plaintiff's proof, the defendant moved for a directed verdict which was overruled and the case went to the jury on the plaintiff's proof alone. The jury returned a general verdict of $10,000 in favor of the plain-

496

tiff. Ardell Ross, administrator, has filed seven (7) Assignments of Error.

Assignment of Error No. 7 is as follows:

"It was error for the Court to charge the following special request of plaintiff:

" 'Gentlemen, I charge you in behalf of the plaintiff, that where registration of an automobile is proven, that makes out a prima facie case that the automobile was then and there being operated by the owner or by the owner's servant for the owner's use and benefit' (Tr. 93).

"This was error because the presumption from ownership disappears when proof is introduced from which the nonexistence of the fact in issue may be inferred. The evidence, or lack of it, of the position of Ross outside the automobile was sufficient to support the inference that he was not driving."

■■ The above charge is substantially in the words of Code Section 2702. The effect of this statute is to raise a rebuttable presumption which casts upon the defendant the burden of going forward with the proof and the presumption disappears upon the introduction of any positive credible evidence on the subject. McMahan v. Tucker, 31 Tenn. App. 429, 216 S. W. (2d) 356.

■ In the case at bar, the defendant introduced no positive testimony as to who was driving the car. The physical facts and circumstances as shown by the location of the bodies, condition of the car, etc., are certainly not inconsistent with plaintiff's theory that Ross, the owner of the car, was also driving the car at the time of the collision. There is no intimation or evidence that there was any third party about the car.

Griggs was found on the right side of the front seat, his feet down through the space usually covered by the floorboard on the non-driver's side and his feet pinned by the bumper which was knocked back under the car by the impact. His hips were pinned by the glove compartment located on the non-driver's side of the car being driven back against him. These proven facts make it difficult if not impossible to visualize any manner in which Griggs could have been driving the car at the time of the collision and end up in any such position.

On the other hand, while there is no way to tell from the location of Ross's body exactly what did happen, as is often the case in automobile wrecks, yet the physical facts are not inconsistent with plaintiff's theory that Ross was driving at the time of the collision. The door on the driver's side was knocked open and no driver was found pinned under the steering wheel which was driven back and downward.

We think the circumstantial evidence preponderates in favor of plaintiff's theory that Ross was driving the car and that in some manner at or about the time of the collision he jumped or was thrown from the car and was found dead on the ground under one side or the other of the car. One reasonable theory advanced by plaintiff is that the car hit the tree with a terrific force a little to the right of center; the back end of the car jackknifed up and to the left and came back down over and across the body of Ross who had been thrown to the ground on the left side of the car.

At any rate, we think there was ample evidence to support the verdict of the jury that Ross was driving either under the presumption created by Section 2702 of the

Code or under the circumstantial evidence in support of plaintiff's case. See Good v. Tennessee Coach Co., 30 Tenn. App. 575, 209 S. W. (2d) 41. Wherefore, Assignment of Error No. 7 is respectfully overruled.

█ Assignments of Error Nos. 1 and 5 insist that there was no evidence to support the verdict of the jury and that the motion for a directed verdict as to both counts of the declaration should have been sustained.

"A case may be made out by direct evidence, circumstantial evidence, or by a combination of direct and circumstantial evidence. If the evidence for plaintiff, together with all the reasonable inferences therefrom, made her theory more probable than any other, this was enough to take the case to the jury and to support the verdict." Everett v. Evans, 30 Tenn. App. 450, 207 S. W. (2d) 350, 352.

From Prosser on Torts—1941—at page 291, we quote the definition of circumstantial evidence:

"Circumstantial evidence is evidence of a fact or set of facts from which the evidence of another fact may be reasonably inferred. It involves not only the assertion of witnesses as to what they have observed, but a process of reasoning by which a conclusion is drawn. Negligence may, of course, be proved by circumstantial evidence. The testimony of eye witnesses of the actor's conduct is not required and it may be inferred from the proof of other facts and circumstances."

When we review the evidence in light of the above definition it appears that there was ample evidence from which the jury could have concluded that the deceased,

Howard Ross, was traveling northward in his Ford automobile at a very, very high rate of speed in the nighttime, that he failed to follow the concrete highway on its turn to the left but instead drove headlong off the right side of the road straight into the tree demolishing the car and killing himself and friend. We hold that there was ample evidence to support the verdict of the jury both as to the common law count of negligence and to the statutory count relating to excessive speed and reckless driving.

Hence these Assignments of Error Nos. 1 and 5 are respectfully overruled.

Assignments of Error Nos. 2 and 4 insist that the Trial Judge should have directed a verdict as to count number two of the declaration relating to the violation of Code Sections 2681 and 2682 and should not have charged the jury on the alleged violations of said sections. It is true that there was no direct evidence as to violation of these sections but as stated above there was ample circumstantial evidence upon which the jury could conclude that the driver of the automobile had been guilty of violating these two Code Sections. Hence Assignments of Error 2 and 4 are also overruled.

██ Assignment of Error No. 3 is as follows:

"The trial court committed error in submitting to the jury both the first and second count of Plaintiff's declaration.

"This was error because the two counts were inconsistent, the Plaintiff was relying solely on the doctrine of res ipsa loquitur, direct evidence of the facts surrounding the accident does away with the doctrine of res ipsa loquitur, and a finding by the jury on

count two of the Plaintiff's declaration in favor of the Plaintiff and against the Defendant would constitute a finding of direct evidence of the negligence of Defendant.''

A review of the declaration reveals nothing inconsistent, in our opinion, between the two counts. The first count follows the usual and customary allegation of general common law negligence and the second count alleges the violation of Code Sections relating to the driving of motor vehicles on public highways. A person can be guilty of common law negligence in the operation of an automobile and at the same time be guilty of negligence per se by violation of a Code Section relating to the operation of motor vehicles on public highways.

We think His Honor the Trial Judge was correct in submitting the issues under both counts of the declaration to the jury and the Assignment of Error is respectfully overruled.

Assignment of Error No. 6 is as follows:

''It was error for the court to instruct the jury on the doctrine of res ipsa loquitur, which instruction was as follows:

'' 'The proof in this case brings it within the scope of the doctrine of res ipsa loquitur. Res ipsa loqitur means ''The thing speaks for itself,'' more precisely, it asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant or the defendant's intestate, and the occurrence is such as in the ordinary course of things or events does not happen, if due care has been exercised, the fact of the in-

jury itself will be deemed to afford sufficient evidence by way of inference to support a recovery, in the absence of any explanation by the defendant, tending to show that the injury was not due to his want of care.

" 'This doctrine, therefore, gives rise to a form of circumstantial evidence, which permits you gentlemen of the jury to choose the inference of the defendant's negligence in preference to other permissible or reasonable inferences from the facts and circumstances.' (Tr. 88-89)

"This was error because the facts proven were wholly insufficient to make out a case for the application of the doctrine of res ipsa loquitur and that doctrine is not applicable under the circumstances disclosed by the record. The court consequently permitted the jury to arrive at a verdict by guess, speculation, and conjecture; and by basing the inference of negligence which arises from the doctrine of res ipsa loquitur upon other inferences. Only by inferences and presumptions could it be shown that the vehicle was under the control of Ross at the time of the accident."

The facts of the case at bar are, in many respects, similar to those in the case of Burkett v. Johnston—Gibson Law—rendered by this Court on January 13, 1955, 282 S. W. (2d) 647, certiorari denied May 6,—1955, by Tenn. Supreme Court. Substantially the same charge complained of here relating to res ipsa loquitur was given by the same Trial Judge in the Burkett case. We approved the charge as being proper in that case and hold that it was not error for His Honor to so charge in the case at bar.

■ It is true that res ipsa loquitur does not apply to cases where the accident is shown to have occurred in a specific manner or by reason of specific acts or where the defendant goes forward with proof explaining the cause of the accident. Susman v. Mid-South Fair, 1944, 180 Tenn. 471, 176 S. W. (2d) 804; Schindler v. Southern Coach Lines, Inc., 1949, 188 Tenn. 169, 217 S. W. (2d) 775; Sloan v. Nevil, 1950, 33 Tenn. App. 100, 229 S. W. (2d) 350.

■■ In the case at bar there was evidence to indicate excessive speed but such evidence did not tend to exclude the theory that, in addition to excessive speed, the driver of the car was guilty of other acts of negligence which also proximately caused the car to leave the road and smash into the tree. Under the circumstances of this particular case and in view of the many factors unexplained, we do not see any error in His Honor giving a charge of res ipsa loquitur as well as a charge on the violations of Code Sections 2681 and 2682. Certainly, we see no prejudicial error in such charge in view of the ample evidence to support the verdict of the jury irrespective of the doctrine of res ipsa loquitur. Code Section 10654.

It follows that all of the Assignments of Error must be overruled and the judgment of the lower Court affirmed. Judgment will be entered in this Court in favor of the plaintiff, G. L. Griggs, Administrator, against the defendant, Ardell Ross, Administrator, and the sureties on his appeal bond will be taxed with the costs of this appeal.

Avery, P. J. (W. S.), and Bejach, J., concur.