Helen FELLOWS, Plaintiff-Respondent,

v.

Rice FARMER, Administrator of the Estate of Clarence V. Norman, Deceased, Defendant-Appellant.

No. 8245.

Springfield Court of Appeals.

Missouri.

May 5, 1964.

Motions for Rehearing or to Transfer Overruled June 17, 1964.

J. W. Grossenheider, Lebanon, for defendant-appellant.

Claude T. Wood, Richland, B. H. Clampett, Springfield, for plaintiff-respondent.

STONE, Judge.

In this jury-tried action for the alleged wrongful death of her husband, Harold L. Fellows, in and as the result of a one-vehicle tragedy, plaintiff Helen Fellows obtained a judgment for $10,000 against Rice Farmer, as administrator of the estate of Clarence V. Norman, deceased. V.A.M.S. §§ 537.020, 537.080 and 537.090. Defendant appeals.

The accident occurred on Missouri State Highway 28 about two miles south of Dixon in Pulaski County, Missouri, at a highway bridge (approximately fifty feet in length) over McMakin Creek. To avoid confusion as to directions, we will treat of Highway 28 and the bridge as running generally north-and-south, and of McMakin Creek as flowing downstream from east to west under the bridge. Trooper Jim Hudson of the Missouri State Highway Patrol was called about 6:40 P.M. on May 27, 1958, and reached the scene of accident at 7:15 P.M. while it was still "daylight." Hudson found a wrecked 1952 DeSoto coach in the creek bed, just upstream or east of the highway bridge and near a vertical concrete wall or "wing" extending upstream (at right angles to the highway and below its level) at the north end of the bridge to hold and protect the fill and embankment on that side of the creek. The DeSoto was lying "more or less on its * * * right-hand side," with its front end headed downstream in a general westerly direction and its wheels "sticking out" to the south.

There were two men, both dead, in the DeSoto. One of them (so Trooper Hudson said) "was pinned in the left-hand portion of the car * * * front left-hand portion" and was "partially" under the steering wheel which had been "pushed forward." The other man was on the right side, with "the uppermost part of his body and his shoulders" out of the automobile and with "his legs and lower trunk * * * pointed over toward the driver's side" but *not* under the other man. Witness Moss, a funeral director at Waynesville, Missouri, who drove an ambulance to the scene of accident, similarly described the positions of the two bodies in the DeSoto. Trooper Hudson also testified, *with no objection or motion to strike,* that from the "identification they had on them * * * the names they had on their identification" he determined that the man pinned "partially" under the steering wheel was Clarence Norman (defendant's intestate) and that the man with the upper portion of his body out of the right side of the automobile was Harold L. Fellows (plaintiff's husband). Norman had suffered "head and chest injuries"—"he had a crushed chest." Fellows' "head was crushed" but no chest injury to him was observed by either Hudson or Moss. Because some of the information on the photostatic copy of the certificate of title offered in evidence was illegible, ownership of the DeSoto was not established at the trial, but there was evidence that neither plaintiff nor her deceased husband owned that vehicle.

There is no intimation in the record that anyone witnessed the fatal accident; but, from the physical facts ascertained by Trooper Hudson in his investigation and by him explained upon trial with the aid of photographic exhibits, the jury reasonably might have inferred and found that the accident had occurred in the following manner. The DeSoto, north-bound on Highway 28 which has a two-lane asphalt roadway, had rounded a sharp curve to the left just south of the bridge over McMakin Creek. Apparently traveling at a high rate of speed, the DeSoto had gone off the "outside" of the curve (i.e., the right-hand or east edge of the pavement) onto the east shoulder of the highway where it made skid marks which continued to the vertical concrete wall or "wing" extending upstream at the *south* end of the bridge. Missing the south entrance to the bridge, the DeSoto had scraped the *ouside* (i.e., the east or upstream side) of the concrete post at the south end of the east bridge railing, leaving on the outside of that post a tire mark still visible at the time of trial almost five years later, and then had hurtled through space over the creek bed (most of which was dry) a distance of approximately fifty feet to and against the vertical concrete wall or "wing" extending upstream at the *north* end of the bridge, where the automobile left matching paint marks on the concrete wall and fell to rest in the position hereinbefore described.

■ Plaintiff pleaded and submitted her case on the res ipsa loquitur doctrine. As defined in our Missouri cases, that doctrine is applicable when (1) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care, (2) the instrumentality involved was under the management and control of the defendant, and (3) the defendant possesses superior knowledge or means of information as to the cause of the occurrence.[1] Counsel for instant defendant concedes that the accident under consideration was one which ordinarily would not have hap-

1. Martin v. First National of Independence Co., Mo., 372 S.W.2d 919, 924(4); Golian v. Stanley, Mo., 334 S.W.2d 88, 93(8); Layton v. Palmer, Mo., 309 S.W.2d 561, 564(2), 66 A.L.R.2d 1242; Clark v. Linwood Hotel, 365 Mo. 982, 986, 291 S.W. 2d 102, 104(1); Warner v. Terminal R. Ass'n. of St. Louis, 363 Mo. 1082, 1091, 257 S.W.2d 75, 79(1); Cudney v. Midcontinent Airlines, 363 Mo. 922, 928, 254 S.W.2d 662, 665(4); Cruce v. Gulf, Mobile & Ohio R. Co., 358 Mo. 589, 595, 216 S.W.2d 78, 81(6); McCloskey v. Koplar, 329 Mo. 527, 533, 46 S.W.2d 557, 559, 92 A.L.R. 641.

pened if the driver had been exercising due care,[2] and "that the *first element* which is a requisite of the applicability of the doctrine is present." (All emphasis herein is ours.) But defendant contends that the trial court erred in refusing to sustain his motion for a directed verdict at the close of all the evidence, because (so counsel asserts) neither the *second* nor the *third element* reasonably could be found in this case.

■ With respect to the *second element,* defendant's brief presents a two-pronged argument, to wit, (1) that Trooper Hudson's "identification of the bodies was highly speculative" and (2) that, after the DeSoto left the highway, "the positions of the men may have changed." Ergo, any finding that Norman (defendant's intestate) had been driving at the time of accident would amount to "sheer guesswork, speculation and surmise." As for the first prong of the argument, Hudson testified positively, *with no objection or motion to strike and with no cross-examination on this subject,* that from the "identification they had on them * * * the names they had on their identification" he determined that the man pinned "partially" under the steering wheel was Norman and that the man with the upper portion of his body out of the right side of the automobile was Fellows (plaintiff's husband). Regardless of whether this evidence might have been excluded upon timely and appropriate objection or motion to strike, its probative worth and effect were for the jury since it was received without such objection or motion;[3] and, with this evidence in the record, we cannot say, as a matter of law, that identification of the bodies found in the wrecked DeSoto was insufficient.

■■ In the second prong of the argument concerning the *second element* (i. e., that the jury reasonably could not have found that the DeSoto had been under the management and control of defendant's intestate because "the positions of the men may have changed" after the automobile left the highway), counsel points out "that an essential element of a plaintiff's case cannot be left to guess or conjecture, or be established by piling inferences" [Antweiler v. Prudential Insurance Co. of America, Mo.App., 290 S.W.2d 652, 654 (3)] and reminds us that, although a finding essential to recovery may be proved by circumstantial evidence, such evidence should have a tendency to exclude every reasonable conclusion other than the one desired. Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 498(12, 13). But the simple statement of these broad general principles does not resolve the question as to whether the evidence in the instant case reasonably permitted a finding that Norman (defendant's intestate) had been driving at the time of accident.

2. See Lindsey v. Williams, Mo., 260 S.W.2d 472, 474(1), certiorari denied 347 U.S. 904, 74 S.Ct. 428, 98 L.Ed. 1063; Dodson v. Maddox, 359 Mo. 742, 223 S.W.2d 434, 438(7); Tabler v. Perry, 337 Mo. 154, 85 S.W.2d 471, 477(12); Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1002–1003(1, 3); Wells v. Asher, Mo.App., 286 S.W.2d 567, 568; Adams v. LeBow, 236 Mo.App. 899, 160 S.W.2d 826, 828(3); Vesper v. Ashton, 233 Mo.App. 204, 118 S.W.2d 84, 87(2). There is no intimation in the record or suggestion by counsel that another vehicle was involved. State ex rel. and to Use of Brancato v. Trimble, 322 Mo. 318, 18 S.W.2d 4, 5(6); Boresow v. Manzella, Mo., 330 S.W.2d 827, 832.

3. Appelhans v. Goldman, Mo., 349 S.W.2d 204, 207(5, 6); Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535, 539 (4, 5); DeMoulin v. Roetheli, 354 Mo. 425, 189 S.W.2d 562, 565(3); Steeley v. Kurn, 348 Mo. 1142, 157 S.W.2d 212, 213 (4); Doyle v. St. Louis Merchants' Bridge Term. Ry. Co., 326 Mo. 425, 31 S.W.2d 1010, 1012(4), certiorari denied 283 U.S. 820, 51 S.Ct. 345, 75 L.Ed. 1435; Turner v. Yellow Cab Co. of Springfield, Mo.App., 361 S.W.2d 149, 154–155(1); Edmisten v. Dousette, Mo. App., 334 S.W.2d 746, 753, and cases collected in footnote 13; Lomax v. Sawtell, Mo.App., 286 S.W.2d 40, 42(1); Vosburg v. Smith, Mo.App., 272 S.W.2d 297, 302 (9).

■ "[T]here is perhaps no question attended with greater uncertainty in its practical application than the question of when recovery may properly be justified in a given case by way of inference from the circumstances. This because of the obvious impossibility of laying down any hard and fast rule which can be applied to each and every situation, and by which it can be determined without room for honest dispute that the circumstances in the particular case are either sufficient or insufficient to warrant a finding of some additional fact as to which there is no direct evidence, but upon which liability may depend." Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 670. Although "the inference drawn must be reasonable, and may not be arrived at by speculation or conjecture * * * neither is the inference to be precluded by speculation or conjecture, or by a mere possibility that the contrary may be true. * * * Probabilities, not possibilities, are controlling. It is not required that an inference be justified beyond all doubt." Mauzy v. J. D. Carson Co., Mo. App., 189 S.W.2d 829, 833(4); Pipes v. Missouri Pacific R. Co., Mo. (banc), 338 S.W.2d 30, 36(9). See Elgin v. Kroger Grocery & Baking Co., 357 Mo. 19, 26–27, 206 S.W.2d 501, 506. In short, "to afford a substantial and sufficient basis for deductive reasoning in the determination of civil issues, circumstantial evidence need not have the quality of absolute certainty * * *." Ferrell v. Sikeston Coca-Cola Bottling Co., Mo.App., 320 S.W.2d 292, 297 (8). With the foregoing in mind, we are of

the considered opinion that the evidence in the case at bar was sufficient to permit submission of the issue as to whether Norman (defendant's intestate) had been driving at the time of accident—a conclusion supported by abundant authority from other jurisdictions.[4]

Defendant's contention that the *third element* prerequisite to applicability of the res ipsa doctrine cannot be found in the instant case is predicated upon the argument that, since his intestate was killed in the accident, he (defendant) could not have superior knowledge or means of information as to the cause of the occurrence. But in considering this point we should remain mindful (a) of the nature and basis of plaintiff's cause of action, i. e., that her suit is for the death of her husband alleged to have been caused by the negligence of *Norman, defendant's intestate* [V.A.M.S. § 537.080], and (b) of defendant's status, i. e., that he is sued *in a representative capacity as administrator of Norman's estate,* having been appointed as such administrator that plaintiff might be enabled to prosecute her cause of action. V.A.M.S. § 537.020; Darrah v. Foster, Mo., 355 S.W.2d 24, 30(7); State ex rel. McCubbin v. Ginn, Mo., 347 S.W.2d 119.[5]

Although many of the definitive declarations with respect to the res ipsa doctrine state the third element as being that *"the defendant* possesses superior knowledge or means of information as to the cause of the occurrence,"[6] it will be observed that such references to *"the defendant"* are found in

---

4. Spaur v. Hayes, W.Va., 126 S.E.2d 187 (5); Takataro Shiba v. Weiss, 3 Utah 2d 256, 282 P.2d 341(1); Koob v. City of Lansing, 321 Mich. 150, 32 N.W.2d 373 (2); Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389, 390, 392(6); Kimberly v. Reed, 79 Ga.App. 137, 53 S.E.2d 208, 214(8); Pettigrew v. Branch, 101 Ga.App. 534, 114 S.E.2d 391, 393; Cowgill v. Boock, 189 Or. 282, 218 P.2d 445(8), 19 A.L.R.2d 405. See also MacGregor v. Bradshaw, 193 Va. 787, 71 S.E.2d 361(4); State v. Ewing, 250 Minn. 436, 84 N.W.2d 904(1, 8); Shaughnessy v. Morrison, 116 Conn.

661, 165 A. 553(1); Fuller v. Bailey, 237 S.C. 573, 118 S.E.2d 340; Stegall v. Sledge, 247 N.C. 718, 102 S.E.2d 115(3, 8); Ross v. Griggs, 41 Tenn.App. 491, 296 S.W.2d 641(3); Moore v. Watkins, 41 Tenn.App. 246, 293 S.W.2d 185; Burkett v. Johnston, 39 Tenn.App. 276, 282 S.W.2d 647, 649–650.

5. For the factual and legal background of defendant's appointment as administrator, see In re Norman's Estate, Mo.App., 347 S.W.2d 908, and State ex rel. Farmer v. Allison, Mo.App., 359 S.W.2d 245.

6. See cases cited in note 1, supra.

cases in which *the named defendant has been the alleged tort-feasor.* Where, as here, *the named defendant is sued in a representative capacity* as administrator of the estate of the alleged tort-feasor, the third element may be framed more aptly and appropriately in language such as that employed (although not for the reason motivating our suggestion) in Gibbs v. General Motors Corporation, 350 Mo. 431, 166 S.W.2d 575, 581(6), to wit, "that *the one in charge of [the] instrumentality which causes injury* either knew the cause or [had] the best opportunity of ascertaining" it.[7]

If Norman (defendant's intestate) were living, certainly he would be regarded as having "means of information as to the cause of the occurrence superior to those of plaintiff." Lindsey v. Williams, Mo., 260 S.W.2d 472, 475, certiorari denied 347 U.S. 904, 74 S.Ct. 428, 98 L.Ed. 1063. So our inquiry finally becomes whether plaintiff, who otherwise undoubtedly might rely upon the res ipsa doctrine, is to be denied recourse thereto solely by reason of the tragic fortuity of Norman's death. Counsel have cited, and we have located, no Missouri case discussing this precise question, but authority elsewhere is to the effect that the death of the operator of a vehicle, which makes his superior knowledge unavailable upon trial, does not render the doctrine inapplicable.[8]

■ "It is stated [by defendant's counsel] that the real reason for the [res ipsa] rule lies in the fact that the cause of injury is usually known by the defendant and unknown to the plaintiff, and that when the reason for the rule fails the rule becomes inoperative. In other words, the management and control of the automobile having been in the decedent, and he being dead, he cannot now speak the true cause of the accident. That theory may be one of the reasons for the rule, but it is not the basic cause for its adoption. The true reason is found in the rule itself, in that the act complained of, or the thing, speaks for itself. It is therefore not the matter of the defendant's ability to speak, but the fact that the act itself speaks.

"It would be just as logical to say that if a defendant does not know the cause of an accident, a plaintiff might not recover. A defendant might purposely say he did not know. If he did so he might as well be dead in so far as a plaintiff was concerned, for if a defendant could or would not speak the plaintiff must fail. The rule permits a defendant to speak the cause of the accident and perhaps thereby escape liability. He may do that by testimony other than his own. The plaintiff's right to recover cannot be grounded on a defendant's inability or refusal to speak." Weller v. Worstall, 50 Ohio App. 11, 197 N.E. 410, 413 [affirmed 129 Ohio State 596, 196 N.E. 637].

■ Reliance upon the res ipsa doctrine has not been foreclosed by the fact that the driver, the only person who might supply information concerning the accident, disappeared immediately thereafter [Nicol v. Geitler, 188 Minn. 69, 247 N.W. 8, 11], nor by the fact that all employees in a

---

7. Similarly, in Smith v. Hollander, 85 Cal. App. 535, 259 P. 958, 960, quoted with approval in Harke v. Haase, 335 Mo. 1104, 1109, 75 S.W.2d 1001, 1003, and in Tabler v. Perry, 337 Mo. 154, 166, 85 S.W.2d 471, 477, it was said that "[t]he one in control of the instrumentality causing the injury is or should be in a position to know" the cause of the occurrence.

8. Weller v. Worstall, 50 Ohio App. 11, 197 N.E. 410, 413, affirmed 129 Ohio State 596, 196 N.E. 637; Haasman v. Pacific Alaska Air Express, D.C.Alaska, 100 F. Supp. 1, affirmed De Marais v. Beckman, 9th Cir., 198 F.2d 550, certiorari denied 344 U.S. 922, 73 S.Ct. 388, 97 L.Ed. 710; annotation 79 A.L.R.2d 6, 41–42; Prosser on Torts (2nd Ed.), § 42, loc. cit. 209; 65 C.J.S., Negligence, § 220(5), loc. cit. 1002. In this connection, see the cases collected in annotation 79 A.L.R.2d loc. cit. 42, in which the driver's death was not even mentioned as a factor bearing upon application of the res ipsa doctrine.

dynamite factory and any other possible witnesses had been "scattered to the four winds" in a series of explosions out of which litigation arose. Judson v. Giant Powder Co., 107 Cal. 549, 40 P. 1020, 29 L.R.A. 718. And distinguished scholars and authors in the field of torts have pointed out that "[m]any plaintiffs have successfully invoked res ipsa loquitur against defendants who had no knowledge and could give no explanation of how the accident happened" [2 Harper and James, Torts, § 19.9, p. 1094, footnote 1] and that "in a large number of cases in which there has been no consideration of the point it is apparent from the facts that the accident was a mysterious occurrence, as to which the defendant was as much in the dark as the plaintiff." Prosser on Torts, (2nd Ed.), § 42, loc. cit. 209. In the instant action, Norman (found by the jury to have been the driver of the DeSoto) either knew or had the better opportunity to know the cause of the occurrence, and plaintiff should not be precluded from reliance upon the res ipsa doctrine solely by reason of the lamentable circumstance of Norman's death. We conclude that plaintiff made a submissible case under that doctrine.

 Defendant also contends that "the court erred in permitting plaintiff to testify over defendant's objection as to her deceased husband's earnings and occupation and matters defendant's intestate [Norman] could have refuted had he been living because plaintiff was incompetent to testify as to these matters under V.A.M.S. § 491.010," the so-called "dead man's statute." This statute is a *qualifying* enactment in that it first removes the common-law disqualification of witnesses by reason of interest, and it is a *disqualifying* enactment in that it then explicitly recognizes and imposes disqualification in certain instances, to wit, (1) "in actions where one of the

original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify * * * in his own favor * * *" (to which we refer as the *"transactions"* proviso), and (2) "where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will * * *" (to which we refer as the *"administration"* proviso). See Freeman v. Berberich, 332 Mo. 831, 842–845, 60 S.W.2d 393, 398–400. The disqualification imposed by the *"administration"* proviso is absolute with respect to *"anything* which occurred before commencement of probate" [Birdsong v. Estate of Ladwig, Mo.App., 314 S.W.2d 471, 475(3)], but the language of this proviso specifically limits its application to *actions ex contractu.* Freeman, supra, 332 Mo. loc. cit. 847, 60 S.W.2d loc. cit. 401; Grimm v. Gargis, Mo., 303 S.W.2d 43, 51, 74 A.L.R.2d 599; Birdsong, supra, 314 S.W.2d loc. cit. 475(3). Hence, in this *action ex delicto,* the measure and extent of plaintiff's disqualification as a witness are to be determined under the *"transactions"* proviso, the applicability of which is not limited to any given category of actions. Freeman, supra, 332 Mo. loc. cit. 847, 60 S.W.2d loc. cit. 401.

 It is now well-settled that the *"transactions"* proviso does not impose a general disqualification and does not make the surviving party an incompetent witness for all purposes,[9] but that such surviving party is disqualified "only to the extent that his testimony might be subject to question by the other party if living" and in respect

9. Grimm v. Gargis, Mo., 303 S.W.2d 43, 51(13), 74 A.L.R.2d 599; Burgdorf v. Keeven, 351 Mo. 1003, 174 S.W.2d 816, 819(1); Findley v. Johnson, Mo., 142 S.W.2d 61, 67(9); Elsea v. Smith, 273 Mo. 396, 408, 202 S.W. 1071, 1073; Deichmann v. Aronoff, Mo.App., 296 S.W. 2d 171, 181(13); Boggess v. Cunningham's Estate, Mo.App., 207 S.W.2d 814, 818(3, 4).

"to transactions between the witness and the party then dead" [Elsea v. Smith, 273 Mo. 396, 408, 202 S.W. 1071, 1073(2)] and remains a competent witness in respect to transactions with others and as to matters "with which [the deceased] had no connection, and of which he had no knowledge." [10] The complaint under discussion is that plaintiff testified "over defendant's objection as to her deceased husband's earnings and occupation and matters defendant's intestate could have refuted had he been living." Neither the point itself nor the twelve-line argument in support thereof identifies the "matters [in plaintiff's brief testimony] defendant's intestate could have refuted had he been living" and our examination of her testimony discloses no such "matters." Plaintiff was not riding in the DeSoto, did not witness the accident, and did not undertake to testify with respect thereto. She did state that, on the date of accident, her husband was a soldier, thirty-two years of age, stationed at Fort Leonard Wood and "earning" $188 per month, but these were not facts concerning which her lips were sealed by the "transactions" proviso. Cf. Burns v. Polar Wave Ice & Fuel Co., Mo.App., 187 S.W. 145, 147. See again the cases cited marginally in notes 9 and 10.

■■■■■ Furthermore, there were no objections to the questions which elicited the information as to the age and occupation of plaintiff's husband, and the objection to the inquiry as to "what your husband was earning at the time of his death" did not even suggest plaintiff's incompetency: "We want to object * * * on the grounds that until—until it has been proven that Mr. Norman [defendant's intestate] is responsible for her husband's death, all of this testimony concerning damages she may be entitled to is—is immaterial. * * *

10. Weiermueller v. Scullin, 203 Mo. 466, 472, 101 S.W. 1088, 1090; Eyermann v. Piron, 151 Mo. 107, 115, 52 S.W. 229, 231; Birdsong v. Estate of Ladwig, Mo. App., 314 S.W.2d 471, 476(5); Kneuven v. Berliner's Estate, Mo.App., 54 S.W.2d

It's premature." Since a witness is not incompetent under V.A.M.S. § 491.010 for all purposes, objections must be not only timely [Elsea, supra, 273 Mo. loc. cit. 408, 202 S.W. loc. cit. 1073(4)] but also specific and sufficiently exact to inform the court why the witness is disqualified in the particular situation at hand. Birdsong, supra, 314 S.W.2d loc. cit. 477(10), and cases there cited in footnote 7. See Garden, The "Dead Man's Statute" in Missouri, 23 Wash. U. L.Q. 343, 366. The point under discussion must be disallowed.

■■■ Defendant's next point lists three particulars in which plaintiff's verdict-directing instruction 1 is alleged to have been erroneous. The *first* is that "said instruction assumed that Clarence Norman was driving the automobile and Harold Fellows was riding in the automobile without hypothesizing any facts from which the jury could so find." Examination of the instruction reveals that it "assumed" nothing with respect to the identity of either the driver or the occupant but that it required affirmative findings that Norman was driving and Fellows was riding in the DeSoto. It is not apparent to us how the instruction properly could have hypothesized "facts from which the jury could so find"; but, if defendant's counsel deemed the hypothesization of further facts to be necessary or desirable, he should have offered "a clarifying or amplifying instruction." Hooper v. Conrad, 364 Mo. 176, 189, 260 S.W.2d 496, 501; Massey v. Berlo Vending Co., Mo., 329 S.W.2d 772, 777(5). Having failed so to do, he will not be heard to complain now.

■■■ The *second* particular is that the instruction permitted the jury to find that Fellows (plaintiff's husband) "suffered personal injuries from the occurrence from

494, 500(9); Ford v. McLain, 164 Mo. App. 174, 179, 148 S.W. 190, 192(3). See also Martin v. Jones, 59 Mo. 181, 187; B. F. Goodrich Rubber Co. v. Bennett, 222 Mo.App. 510, 514, 281 S.W. 75, 77(14, 15).

which he died while there is no evidence from which the jury could so find without resorting to guesswork, speculation and surmise." It is indeed strange that there was no *direct* evidence, either lay or expert, that Fellows died as a result of injuries suffered in the accident. But, although the burden rested on plaintiff to prove with reasonable certainty that the negligence of Norman (defendant's intestate) was the proximate cause of her husband's death, it was permissible for her to show "[s]uch connection * * * by circumstantial evidence which should be considered in the light of ordinary experience and such conclusions deduced therefrom as common sense dictates." 25 C.J.S. Death, § 87, loc. cit. 1216.

Fellows was a 32-year old soldier stationed at Fort Leonard Wood, where he had been on the afternoon of the fatal occurrence. As an occupant of the DeSoto, he was subjected to brutal violence when that vehicle, traveling at sufficient speed to hurtle through space for some fifty feet, crashed into a concrete wall. When found dead in the wrecked automobile, his primary injury was described bluntly and vividly by Trooper Hudson as "a crushed head." Perhaps it might be argued, as a remote possibility, that his head had not been crushed in the murderous impact of steel against concrete or that he did not die as a result of that injury, even as "[i]t [could] be argued in the realm of uninhibited conjecture that the victim of an assassin's bullet might have died of a heart seizure before the bullet penetrated his chest." Kotal v. Goldberg, 375 Pa. 397, 100 A.2d 630, 633. See Bone v. General Motors Corp.,

Mo., 322 S.W.2d 916, 922, 71 A.L.R.2d 361. But, harking back to what we have read and said previously concerning circumstantial evidence, we are of the opinion that the facts and circumstances shown in evidence reasonably permitted the inference and finding that the described occurrence was the proximate cause of Fellows' death.[11] Moreover, the record indicates that upon trial defendant's counsel treated Fellows' death by reason of his traumatic injuries as an uncontroverted fact, so he is in poor position to complain now because this was not established by direct evidence. Silverstein v. St. Louis Public Service Co., Mo., 295 S.W.2d 37, 39(1).

The *third* assignment directed to plaintiff's instruction 1 is that it submitted the case under the res ipsa doctrine "without requiring the jury to find facts which would show that the defendant possessed superior knowledge of the occurrence * * *." Not having been presented by specific objection either at the time of trial or in the motion for new trial, this assignment now asserted for the first time in defendant's brief will not be considered and ruled here.[12] However, it may be noted in passing that instruction 1 closely followed the suggestions in Harke v. Haase, 335 Mo. 1104, 1111, 75 S.W.2d 1001, 1004, concerning the form and content of plaintiff's instructions in a res ipsa case.

Defendant's final point is that the giving of plaintiff's measure-of-damages instruction 2 constituted reversible error "because there was no evidence from which the jury could have found plaintiff sustained any pecuniary loss as a result.

---

11. Herke v. St. Louis & S. F. Ry. Co., 141 Mo.App. 613, 617–618, 125 S.W. 822, 823(2, 3); Buesching v. St. Louis Gas Light Co., 73 Mo. 219, 229–230; Wiese v. Remme, 140 Mo. 289, 297–298, 41 S.W. 797, 799(1); Chapman v. Bimel-Ashcroft Mfg. Co., Mo., 263 S.W. 993, 996 (3). See Wyckoff v. Davis, Mo., 297 S.W.2d 490(5); Voelker v. Hill-O'Meara Const. Co., 153 Mo.App. 1, 8, 131 S.W. 907, 909(1).

12. V.A.M.R. Rules 79.03 and 70.02; Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 609 (10–13); Duffendack v. St. Louis Public Service Co., Mo.App., 365 S.W.2d 52, 54 (4); M.F.A. Cooperative Ass'n. of Mansfield v. Murray, Mo.App., 365 S.W.2d 279, 288(11); Grimes v. Standard Oil Co., Mo.App., 370 S.W.2d 627, 638(22).

of her husband's death * * *." In pressing this point, counsel overlook plaintiff's testimony that her husband was paid $188 per month; that, by reason of his military status, she was receiving "an allotment" of $156.90 per month which terminated upon his death; that he had supported her since the date of their marriage; and that, at the time of his death, he "was contributing his earnings" to her support. Wholly aside from this positive evidence, a husband is under a legal duty to support his wife; and, in the absence of evidence on this subject, the law would indulge the presumption that a deceased husband had discharged that legal duty.[13] Defendant's attack upon instruction 2 is without merit.

Finding no reversible error in any respect assigned, the judgment for plaintiff is affirmed.

RUARK, P. J., and HOGAN, J., concur.

---

13. O'Hara v. Lamb Const. Co., 200 Mo. App. 292, 301, 302, 206 S.W. 253, 255 (7), 256; Steinmetz v. Saathoff, Mo.App., 84 S.W.2d 434, 437(5, 6). See Samo- hoviec v. American Mfg. Co., Mo.App., 218 S.W. 684(2); Smith v. Simpson, 221 Mo.App. 550, 558, 288 S.W. 69, 73.