IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 27, 2001 Session

## SUZANNE JONES, ET AL. v. METRO ELEVATOR COMPANY, ET AL.

**Direct Appeal from the Circuit Court for Madison County**
**No. C96-221; The Honorable Mark Agee, Judge**

_____

**No. W2000-02002-COA-R3-CV - Filed December 31, 2001**

_____

This appeal involves claims for injuries sustained by the plaintiff while riding in an elevator. The plaintiff brought suit against numerous parties including the company managing the building and the company under contract to service the elevators in the building. The circuit court granted a motion for summary judgment as to the company managing the building. The case proceeded to trial, however, against the company under contract to service the elevators. After the circuit court refused to instruct the jury on the doctrine of _res ipsa loquitur_, the jury returned a verdict in favor of the elevator service provider. The plaintiff appeals the grant of summary judgment and the refusal to instruct the jury on the doctrine of _res ipsa loquitur_ and for the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Thomas K. McAlexander, Jackson, TN, for Appellant

R. Douglas Hanson, Memphis, TN, for Appellee, Metro Elevator Company

David J. Pflaum and Erik O. Thorngren, Nashville, TN, for Appellee, Wayne Tomlinson & Associates

## OPINION

### Facts and Procedural History

Suzanne Jones (Mrs. Jones) was injured in an elevator located in the First Tennessee Bank Building on Old Hickory Boulevard in Jackson, Tennessee on or about June 15, 1995. Ms. Jones' injuries occurred when the elevator came to an abrupt stop, causing her to fall. This appeal involves claims surrounding those injuries.

Because this cause of action consists of numerous parties, their relationship to the incident should be noted at the outset. At the time of the incident, Wayne Tomlinson & Associates (Tomlinson), a property management firm, managed the First Tennessee Bank Building where the elevator was located. Tomlinson, however, was not solely responsible for the upkeep and maintenance of the building. Tomlinson contracted with Metro Elevator Company, Inc. (Metro) to maintain the elevators on the property. In addition, Tomlinson contracted with Alabama Mid-South Services, Inc. (Alabama Mid-South) to provide janitorial services, handle maintenance requests, and dispatch repairmen to correct maintenance problems in the building. Lastly, the elevator, approximately twenty-five years old at the time of Mrs. Jones' injury, was installed by Dover Elevator Company (Dover) in 1971.

Alleging negligence, Mrs. Jones and her husband, Robert Jones (Mr. Jones; jointly referred to as the Jones) filed a complaint against Dover, Tomlinson, and Metro on June 12, 1996. The complaint stated that Dover and Metro had a duty to maintain the elevator in which the injury occurred and breached that duty by failing to properly inspect, maintain, and repair it. The complaint further stated that Tomlinson, by way of its contract to manage the premises, was under a duty to keep the building in a proper and safe condition. Mrs. Jones alleged that the duty owed by Tomlinson was breached by Tomlinson's failure to ensure that the elevator was properly inspected, maintained, and repaired. For her injuries, Ms. Jones sought $250,000 in damages. Mr. Jones sought $100,000 in damages for loss of consortium.

Tomlinson filed a third-party complaint against Alabama Mid-South. Alabama Mid-South's alleged connection to the incident centered around a complaint concerning an elevator in the First Tennessee Bank Building. The complaint was allegedly received the night before the incident involving Mrs. Jones. Carl Lee (Mr. Lee), the building occupant, testified by deposition that the night before Mrs. Jones' injury, an elevator in the building "stopped a little harder than usual."[1] Mr. Lee further testified that he informed an employee of Alabama Mid-South of the abrupt stop soon after it occurred. Alabama Mid-South failed to correct the problem, notify Tomlinson or Metro, or shut down the elevators. Accordingly, Tomlinson alleged in its third-party complaint that any liability owed by Tomlinson should be recoverable from Alabama Mid-South.

Karen Lee (Ms. Lee), the property management director of Tomlinson, and Billy Williams (Mr. Williams), part owner and president of Tomlinson, gave pretrial depositions. Ms. Lee, in her deposition, indicated that Alabama Mid-South, as opposed to Tomlinson, retained responsibility for alerting Metro of possible problems with the elevators and would have been the one to make a decision to close them off. Mr. Williams testified in his deposition that Tomlinson did not handle elevator maintenance, but would have alerted Metro or closed off the elevators if they knew of a problem with the elevators. Mr. Williams further testified that Tomlinson and Metro were distinct and separate entities. According to the deposition, Tomlinson had no ownership of Alabama Mid-

---

[1]There are two elevators in the First Tennessee Bank Building. Mr. Lee could not recall which elevator he was riding in when the alleged abrupt stop occurred.

South, both had separate employees, they did not share tools, and Tomlinson retained no control or supervision over Alabama Mid-South's employees.

On May 7, 1997, the Jones voluntarily dismissed Dover from the cause of action, leaving only Metro and Tomlinson as defendants and Alabama Mid-South as a third-party defendant. Subsequently, on July 20, 1998, Tomlinson filed a motion for summary judgment. Tomlinson, in its motion for summary judgment, argued that Metro had exclusive control over the maintenance of the elevators. Accordingly, Tomlinson argued it could only be held liable if it had either actual or constructive knowledge of a problem with the elevator prior to Mrs. Jones' injuries. Having no actual knowledge, Tomlinson also argued that because Alabama Mid-South was an independent contractor instead of an agent, Alabama Mid-South's knowledge of a possible problem with the elevators could not be imputed to Tomlinson.

The circuit court granted Tomlinson's motion and an order was entered on December 4, 1998 dismissing the Jones' claims against Tomlinson with prejudice. Being dismissed from the suit, Tomlinson voluntarily dismissed its third-party claim against Alabama Mid-South. Thus, Metro was left as the sole defendant in the suit.

The Jones' case against Metro proceeded to trial before a jury. The expert testimony presented at the trial offered insight into the actual cause of the incident which injured Mrs. Jones. The Jones offered the expert testimony of Clarence Kail (Mr. Kail), an elevator inspector for the State of Tennessee. According to Mr. Kail's testimony, the elevator's sudden stop resulted from a missed or skipped "slowdown switch" designed to help the elevator decelerate at a safe rate. The failure of the slowdown switch caused the elevator to make an abrupt stop.

The Jones sought to prove that the failure of the slowdown switch resulted from the negligence of Metro in its inspecting and/or cleaning of the switch contacts. Mr. Kail testified that if the slowdown switch became dirty, it might fail, causing an abrupt stop similar to the one that occurred while Mrs. Jones was riding in the elevator. Mr. Kail further stated that in his opinion, the incident occurred because of dirt on the switch. Mr. Kail's opinion was based on assertions made by Joe Barnes, an employee of Metro, who inspected the switch soon after the incident.

On cross-examination, however, Mr. Kail testified to another possible cause of the incident. When questioned about whether or not "that's just one of those things that's going to happen," referring to the missed slowdown switch, Mr. Kail answered "especially when they get some age on them." This testimony suggested that a slowdown switch can fail even in the absence of negligence. Thus, the jury was presented with two theories on the cause of the elevator's abrupt stop: Metro's negligence in allowing the switch to become dirty or "just one of those things that's going to happen" absent negligence.

At trial, the Jones requested that the court charge the jury with Tennessee Pattern Jury Instruction Civil 4.01 regarding the doctrine of *res ipsa loquitur* in addition to the general jury instruction on negligence. The court refused and, instead, charged the jury only with the general

instruction on negligence. The jury returned a verdict in favor of Metro, finding that insufficient proof was offered demonstrating Metro's negligence.

The Jones appeal from the circuit court and raise the following two issues for review:

I. Whether the trial court erred by refusing to charge the jury on the doctrine of *res ipsa loquitur*; and

II. Whether the trial court erred by granting a motion for summary judgment in favor of Defendant/Appellee Wayne Tomlinson and Associates on December 4, 1998.

## Law and Analysis

With regard to the first issue, we hold that the trial court did not err by refusing to charge the jury on the doctrine of *res ipsa loquitur*. In <u>Armes by Armes v. Hulett</u>, 843 S.W.2d 427 (Tenn. Ct. App. 1992), this Court outlined three basic requirements needed for proper application of the doctrine of *res ipsa loquitur*. We listed the basic requirements as the following:

1. There must be a "thing" causing an injury.

2. That "thing" must be under the exclusive management and control of the defendant or its servants.

3. The "thing" must be shown to be of such a nature that injury does not ordinarily result from its careful management.

<u>Id.</u> at 432-33. Although it may appear to the Jones that the basic requirements are present, Tennessee law also places certain restrictions on the application of the doctrine. Because of these restrictions, application of the doctrine of *res ipsa loquitur* would be improper in this case.

First, this Court has consistently held that the doctrine of *res ipsa loquitur* does not apply in situations "where the plaintiff's injury could reasonably have occurred even without the defendant's negligence." <u>Underwood v. HCA Health Servs. of Tenn.</u>, 892 S.W.2d 423, 427 (Tenn. Ct. App. 1994) (citing <u>Cockrum v. State</u>, 843 S.W.2d 433, 438 (Tenn. Ct. App. 1992); <u>Brown v. Univ. Nursing Home, Inc.</u>, 496 S.W.2d 503, 509 (Tenn. Ct. App. 1972); <u>Walls v. Lueking</u>, 332 S.W.2d 692, 695 (Tenn. Ct. App. 1959)). Here, the Jones' expert testified that elevator slowdown switches can fail absent negligence "especially when they get some age on them." This testimony indicates that negligence may not have been the cause of the incident. Accordingly, in light of this testimony, a jury charge concerning the doctrine of *res ipsa loquitur* would not have been proper.

Second, the doctrine of *res ipsa loquitur* should not be applied "where specific acts of negligence are alleged and where evidence in support of such allegations is presented." <u>Brown</u>, 496 S.W.2d at 509; <u>Ross v. Griggs</u>, 296 S.W.2d 641, 646 (Tenn. Ct. App. 1955); <u>Schindler v. Southern Coach Lines</u>, 217 S.W.2d 775, 777 (Tenn. 1949). Here, the Jones articulated the negligent acts which they allege caused the elevator to skip the slowdown switch and cause injuries to Mrs. Jones.

Specifically, the Jones alleged that dirt accumulated on the switch and kept the elevator from properly working and that Metro's failure to keep the switch clean proximately caused Mrs. Jones' injuries. Further, the Jones elicited testimony indicating that the switch was dirty soon after the accident and that inspection and maintenance schedules were not properly followed. This allegation and the proof offered in its support further remove this case from the realm of cases where the doctrine of *res ipsa loquitur* can properly be applied. Thus, for these reasons, we hold that the trial court did not err in refusing to instruct the jury on the doctrine of *res ipsa loquitur*.

With regard to the second issue, we hold that the trial court did not err by granting a motion for summary judgment in favor of Tomlinson. Summary judgment is appropriate if the movant demonstrates that no genuine issues of material fact exist and that he is entitled to a judgment as a matter of law. See TENN. R. CIV. P. 56.03. We must take the strongest view of the evidence in favor of the nonmoving party, allowing all reasonable inferences in his favor and discarding all countervailing evidence. See Shadrick v. Coker, 963 S.W.2d 726, 731 (Tenn. 1998) (citing Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993)). With regard to questions of law, we review the record *de novo* with no presumption of correctness of the judgment below. See TENN. R. APP. P. 13(d); Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997).

In their brief, the Jones raise only one argument with regard to the summary judgment. The Jones' sole contention is that the circuit court erred by granting the motion for summary judgment in light of the opinion issued by this Court in Vann v. Howell, No. 02A01-9809-CV-00246, 1999 WL 454628 (Tenn. Ct. App. June 30, 1999). In Vann, we held that landlords and property owners have a duty to keep the common areas under their control in good repair and in safe condition. This duty "includes the obligation to remove or warn against any dangerous condition on the premises of which [the] landlord is aware or should have been aware through the exercise of reasonable diligence." Id. at *3.

We stated in Vann that, "although the landlord is by no means an insurer of his tenants' safety, Tennessee common law has long held the landlord responsible for the condition of common areas under his control." Id. A landlord or property owner's duty extends to elevators deemed common areas. Further, with regard to elevators, this duty is more stringent that of reasonable care. The duty with regard to elevators is analogous to that of a common carrier where "the highest degree of care and precaution" is required. Id. at *4.

The Jones reliance on Vann, however, is misplaced. First and foremost, the Jones concede in their brief that Metro had exclusive control over the elevators in the building. The Jones call attention to the testimony of two employees of Metro. Joe Barnes, a service mechanic of Metro, testified that Metro was solely responsible for inspecting and repairing the elevators. In addition, the Jones point to the testimony of a corporate representative, Donald Jolly (Mr. Jolly). Mr. Jolly also indicated that Metro "would be the exclusive agency or company that would inspect or repair [the] elevators."

In Vann, we were careful to note that landlords and property owners are responsible for the condition of common areas *under their control*. Id. at *3. Even when assuming that Tomlinson's contractual agreement to manage the building imposed upon Tomlinson the duties of a landlord or property owner, the Jones have conceded that Metro, as opposed to Tomlinson, had exclusive control over the elevators. Accordingly, Vann provides no help to the Jones in their contention that the circuit court erred in granting Tomlinson's motion for summary judgment.

Second, when defining the duties of a landlord or owner of property in Vann, we stated that the duties only extend to dangers that are known or that should be known through reasonable diligence. The Jones, in their response to Tomlinson's motion for summary judgment, provided no evidence that Tomlinson retained actual knowledge of any danger associated with the elevator. Thus, the Jones, to show that a duty existed, had to show that Alabama Mid-South, the company receiving the complaint about an elevator, was an agent of Tomlinson. Only then could knowledge of the alleged danger be imputed to Tomlinson.

The Jones, however, have conceded that this is not an issue of agency. Thus, the Jones have pointed to no evidence indicating that the circuit court erred by failing to find that Alabama Mid-South was an agent of Tomlinson. Our review of the record leads to the same conclusion. Accordingly, we hold that the trial court did not err by granting Tomlinson's motion for summary judgment.

**Conclusion**

For the foregoing reasons, the decision of the circuit court is affirmed. Costs of this appeal are taxed against the Appellants, Suzanne Jones and Robert Jones, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE